UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Mint Bank International, LLC and Guy Gentile Nigro<br><br>*Plaintiffs,*<br><br>- against -<br><br>Office of the Commissioner of Financial Institutions of Puerto Rico<br><br>- and -<br><br>George R. Joyner Kelly, in his official capacity as Commissioner of Financial Institutions of Puerto Rico and Iris Nereida Jiménez, in her official capacity as the Auxiliary Commissioner of the Office of the Commissioner of Financial Institutions of Puerto Rico,<br><br>*Defendants.* | <u>Civil  18-1441</u><br><br><br>Civil Rights, 42 U.S.C. § 1983<br><u>**Trial by Jury Demanded**</u> |

**COMPLAINT**

Adsuar Muñiz Goyco Seda & Pérez-Ochoa, P.S.C.
208 Ponce de León Ave., Suite 1600
San Juan, PR 00918
kstipec@amgprlaw.com
Phone: (787) 281-1968


Ford O'Brien LLP
575 Fifth Avenue, 17th Floor
New York, NY 10017
aford@fordobrien.com
Phone: (212) 858-0040
(*pro hac vice pending*)
*Counsel for Plaintiffs*

TO THE HONORABLE COURT:

Plaintiffs allege and aver as follows:

## NATURE OF THE CASE

1.      Mint Bank International, LLC ("Mint Bank") properly applied for a license to form an international financial entity in Puerto Rico by duly filing all required paperwork, submitting all documents requested in the application form and demonstrating that the financial institution would be sufficiently capitalized and managed by an indisputably qualified Director and qualified staff consisting of, eventually, hundreds of Puerto Rico citizens.  The Office of the Commissioner of Financial Institutions of Puerto Rico ("OCFI") concluded that Mint Bank had satisfied all requirements as to "financial solvency, credit, and banking experience." Nevertheless, OCFI Commissioner George Joyner Kelly denied Mint Bank's application, not for lack of sufficient qualifications or any other substantive reason, but rather based primarily on (1) the Commission's finding that Mint Bank's Director and Chief Executive Officer, Guy Gentile Nigro, lacked "business integrity" because he made public political statements that were critical of the federal government and that the Commissioner disapproved of, and (2) because Gentile had previously been indicted on allegations of misconduct over a decade ago – an indictment which was dismissed on a motion to dismiss, and from which the government declined to appeal. The specific language that the Commission has highlighted as the reason for denying the application was a statement Gentile made to a reporter years ago that he dreamed of owning an expensive car with a license plate that said "Fuck You DOJ" and a twitter post that read "Fuck the DOJ."  The Commission also denied Mint Bank's application because the Commission discovered a post on Gentile's Instagram page of a picture of Leonardo DiCaprio playing the part of Jordan Belfort in the movie the *Wolf of Wall Street* holding up a martini, smiling as if to say

"cheers," but underneath the post reads "Fuck You All."  Most egregiously, OCFI also denied

Mint Bank's application, in part, on the finding that Gentile threatened to make public corruption

that he learned about during his time cooperating with the Department of Justice ("DOJ") and the

United States Securities and Exchange Commission ("SEC") after he learned that SEC staff

members had made false statements to a federal judge.  (The SEC later admitted to the judge that

it had made the exact false statements that Gentile complained of and formed the basis of his

statement).  The denial of Mint Bank's application is a clear violation of Gentile's rights to

freedom of expression and freedom of speech under the First Amendment of the United States

Constitution and was intended to retaliate against Gentile for making public statements that were

critical of the government.  Penalizing a citizen – whether by criminal charges or by denying him

the right to earn a living and livelihood by denying him a professional license – on account of

expression through speech has been prohibited since 1971 when the Supreme Court in *Cohen v.*

*California* ruled that citizens cannot be punished for wearing clothing displaying the words

"Fuck the Draft." This was a clearly established right when OCFI and Commissioners George

Joyner Kelly and Iris Nereida Jiménez violated it almost fifty years later.

2.      This country was founded on the bedrock principle that speech cannot be penalized by

the government, except in extremely limited circumstances not remotely implicated here. As the

Supreme Court instructed in *Baumgartner:* "One of the prerogatives of American citizenship is

the right to criticize public [officials] and measures – and that means not only informed and

responsible criticism but the freedom to speak foolishly and without moderation."  The

Commission's actions in denying Mint Bank's license simply because they find Gentile's past

statements "lewd," as they described them, are in clear violation of his constitutional rights and

indeed in complete disregard of the fundamental principles this country was built upon.

3

Commissioner Joyner Kelly or any Commissioner at any federal or state agency is absolutely not permitted to impose his subjective ideas of lewd or unacceptable speech on an applicant and penalize him for use of such speech: The use of the word "fuck" in criticizing the government simply cannot contribute to the denial of any type of license in 2018. Yet it did here, and therefore that decision must be vacated and the license must be granted because there are no facts to support any legitimate reason for denying the application.

3.      Under OCFI's interpretation of its scope of power, it may deny a citizen's right to an occupational license that he is otherwise indisputably entitled to if that citizen says something negative about the government.  However, OCFI did not rest its denial merely on its disapproval of Gentile's speech and articulated attitude, but also on the fact that Gentile had previously been indicted on felony charges that were dismissed in their entirety on statute of limitations grounds. Gentile, of course, voluntarily and fully disclosed the existence of these stale charges and disclosed the particulars of the allegations in Mint Bank's application.  While Supreme Court cases abound with instructional cases unambiguously stating that American citizens are innocent until proven guilty, OCFI has staked out a claim that unproven allegations – and specifically those that have been successfully defeated on a motion to dismiss – can still be used to demonstrate guilt and justify denying a license on account of the Commissioner's broad discretion because the allegation "taints" the defendant's reputation. Indeed, the second reason that OCFI gave for denying the Mint Bank application was simply because its Director, Gentile, was previously indicted.  OCFI essentially ignored both Gentile's 20-year history in the industry which is devoid of a single customer complaint against him or a single finding of even the slightest misconduct, and *Taylor v. Kentucky*, the 1978 case in which the Supreme Court ruled that citizens have a clearly established right of being innocent until proven guilty. OCFI has

taken the position that, if the government accuses a citizen of wrongdoing, that mere allegation, even if successfully defeated in a court of law, is sufficient to damage one's reputation beyond repair, and to provide justification to deny an application for an otherwise available professional license.

4.      To repeat, OCFI has taken the position as an agency that if the government accuses a citizen of wrongdoing, whether that citizen engaged in the conduct or not is entirely beside the point; the mere allegations alone are sufficient to destroy one's reputation ("business integrity") to such an extent that thereafter that person can never receive a license to organize an international financial entity.  In other words, accusation equals conviction with nothing else needed.

5.      Such a finding is contrary to the clearly established protections afforded by the United States Constitution.

6.      To be sure, the agency gave several other minor pretextual reasons for denying the license. But each of the reasons for denying Mint Bank's application for an international financial entity license, individually and collectively, constitute violations of Gentile's substantive due process rights under the Fourteenth Amendment because they bear no rational relation to Gentile's or Mint Bank's fitness to receive a banking license. Furthermore, the process was devoid of sufficient constitutional protections, permitting the denial to be made before any hearing or actual fact-finding, and providing an appeals process which only offers the applicant the opportunity to a "hearing" before the same individuals who denied the application. Consideration of each of the relevant factors as set forth in the application make clear that Mint Bank should have had its license granted. OCFI's decision to deny Mint Bank's license because its Director was previously indicted on decade-old conduct, but effectively cleared of all charges

5

of wrongdoing, shocks the conscience, because if mere government allegations destroys one's "business integrity," then there are no longer any due process safeguards to protect one from erroneous government allegations. Our nation was founded after overthrowing a system where one could not criticize the King and where, if the government made an accusation against a citizen, all rights and privileges were thereafter forfeited. OCFI's reasoning is rooted in antiquated, overthrown principles not permitted in America today.

7.      OCFI's initial decision and Final Order also violate Gentile's substantive due process rights and are therefore void, and sections 3086(c)(1) and 3086(e) of the International Financial Entity ("IFE") Act and Article 6(2) of OCFI Regulation No. 5653, which provide OCFI the discretion to base its decision to grant or deny a license on unconstitutional grounds in violation of both the Fourteenth Amendment and the First Amendment, also violate the substantive due process guarantee of the Fourteenth Amendment, and should therefore be abrogated. Mint Bank should receive its international banking license because (1) it meets all statutory requirements, (2) it properly submitted an application providing all requested information, and (3) it satisfies all objective criteria for obtaining the license.

**Jurisdiction and Venue**

8.      This Court has subject matter jurisdiction under 38 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Gentile's claims assert his constitutional rights, which arise under the First and Fourteenth Amendments to the United States Constitution.

9.      This Court also has subject matter jurisdiction under 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute . . . of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights,

6

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

10.     Under 28 U.S.C. § 1391, venue is proper in a "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  In this case, there are three defendants, the Office of the Commissioner of Financial Institutions of Puerto Rico, and two of its officials acting in their official capacity. All defendants are domiciled in the District of Puerto Rico.

## The Parties

11.     Plaintiff Guy Gentile is a citizen of the United States and was, at all times relevant to this Complaint, a resident of San Juan, Puerto Rico.

12.     Plaintiff Mint Bank International, LLC is a limited liability company that Guy Gentile has sought to organize as an international financial entity under the laws of Puerto Rico.

13.     Defendant, the Office of the Commissioner of Financial Institutions, is a Puerto Rican government entity with the mission to regulate and oversee Puerto Rico's financial system and is domiciled in San Juan, Puerto Rico.

14.     Defendant George R. Joyner Kelly is the Commissioner at the Office of the Commissioner for Financial Institutions and is domiciled in San Juan, Puerto Rico.

15.     Defendant Iris Nereida Jiménez is the Auxiliary Commissioner of the Office of the Commissioner of Financial Institutions of Puerto Rico and is domiciled in San Juan, Puerto Rico.

## Factual Background

Gentile's Personal History and Qualifications for a License

16.     In January 1999, Gentile started an online trading firm called Mint Global Markets formerly known as Stock USA Execution Services, Inc. (speedtrader.com).

17.     Around the same time, Gentile obtained several broker licenses, including Series 7, 63, 24, 55, and 4 and obtained wavier for his Series 56 and 14 licenses.  Mint Global Markets is registered with the Securities and Exchange Commission and maintains membership with exchanges such as NASDAQ.  *Inc. Magazine* rated Mint Global Markets 621 on its list of the fastest growing private American companies in 2010.  Mint Global Markets has also been rated by Barron Magazine as a top online trading firm four years in a row.

18.     Ten years later, in 2009, Gentile founded ProTrade Securities, LLC, another SEC registered broker-dealer and member of the CBSX Stock Exchange and, from 2009 through 2011, he served as its managing member.

19.     Two years later, in December 2011, he founded SureTrader now d/b/a MintBroker International, Ltd[1], a Nassau, Bahamas-based broker dealer licensed by the Securities Commission of the Bahamas. MintBroker, which at one point had almost 75 employees, currently has over 50 employees, and has established itself in a short amount of time as one of the most well-respected and largest broker-dealers in the Bahamas.

20.     Gentile serves as the Chief Executive Officer of MintBroker International, Ltd. (formerly known as Swiss America Securities, Ltd.) and thus engages in providing financial services. MintBroker was incorporated under the laws of the Commonwealth of The Bahamas as a limited liability company on September 10, 2008.  MintBroker is registered as a broker-dealer Class II with the Securities Commission of The Bahamas. MintBroker engages in providing services and functions as a broker-dealer and securities investment advisor.  The principal place of business is Suite #17 Elizabeth on Bay Plaza, Elizabeth Avenue and Bay Street, Nassau, Bahamas.  Gentile

---

[1] SureTrader d/b/a SureTrader.com is currently a division of Mint Broker International, Ltd, that provides on-line trading access for international equities traders.

has never received a single customer complaint related to his financial services (or any other) work.

21.     Gentile is the current beneficial owner of a group of financial institutions located in the United States and other foreign countries ("Group").  The Group consists of MintBroker International, Limited in the Bahamas and its wholly-owned subsidiaries, MintBroker International Limited in U.K.  The Group is involved in various areas of the financial markets including, but not limited to, holding accounts of clearing firms and maintaining custody of funds.

22.     The SureTrader division of MintBroker has enjoyed significant success.

23.     In less than a year of operation under Gentile's leadership, it reported more than 100,000 equity transactions.  The success of the division prompted a major expansion to meet scaling demands and the division set to increase staff by two hundred percent (200%) during March 2012. By 2012, SureTrader was ranked among Barron's top online brokers.

24.     In addition to his work in financial services, Gentile earned a degree in Criminal Justice from the University of Phoenix in 2013.

25.     Gentile also completed the following courses: (1) a basic police leadership course from Online Police Academy, a program of the Police Protective Fund; (2) the Officer Safety, Security and Survival Course from the Online Police Academy; and (3) a Firefighter Survival course developed by the New York State Office of Fire Prevention and Control.

26.     From 2013 through 2016, Gentile served as a Volunteer Firefighter for Putnam Valley Fire Department in his hometown of Putnam, New York.

27.     Since 2013 to the present, Gentile has served as a trustee for the New York State Police

PBA and also served as an advisor to the Putnam County Sheriff, Donald Smith, from 2012

through 2016.

28.     In recognition of his efforts, Gentile was inducted in the Putnam County Sheriff's Honors

Corps., which is an award that recognizes individuals and organizations for their efforts in

making Putnam County a better place to live.

29.     Gentile was also appointed as a trustee for the New York State Troopers PBA Signal 30

Benefit Fund and as an Officer for the U.S. Coast Guard Auxiliary.

<u>Gentile Is Arrested and Cooperates with the DOJ and SEC for Three Years</u>

30.     In July 2012, when Gentile was traveling from the Bahamas to New York, he was

arrested by Customs and Border protection agents upon disembarking from the plane in White

Plains, New York, and interrogated by the FBI.  As a result of this discussion, Gentile agreed to

become an FBI and SEC cooperator, and his work began immediately.  Gentile cooperated with

the Department of Justice and the Securities and Exchange Commission pursuant to cooperation

agreements from July 2012 through 2015.

31.     Gentile's cooperation with the government came with a risk to his personal safety and the

stressful burden of concealing his identity as a cooperator.  During Gentile's period of

cooperation, he worked practically full time for the United States Attorney's Office for the

District of New Jersey, as well as the FBI and the SEC, including nights, weekends, and

holidays. Gentile attended hundreds of meetings with targets of investigations, authored

thousands of emails and texts to targets of investigations, made thousands of recorded phone

calls to over twenty-five potential targets, subjects and witnesses, was appointed a Police Agent

for the Royal Mounted Canadian Police, and attended scores of meetings with government

officials that included the Securities and Exchange Commission, Southern District of New York prosecutors and FBI agents, and District of New Jersey prosecutors and FBI agents.

32.     During Gentile's cooperation, he collected evidence against people that he already knew but also successfully collected evidence against people who he did not previously know, which led to the fruitful cooperation of numerous individuals.  His cooperation has been publicly acknowledged by the government as unprecedented, having resulted in dozens of arrests and convictions, guilty pleas, numerous SEC complaints filed and tens of millions of dollars of civil fines and disgorgement.

33.     Although Gentile spent three years as a hard-working cooperator for the federal government upon Department of Justice assurances that, if Gentile continued to cooperate, it would increase the likelihood that he would not face any criminal prosecution, in June 2015, the United States Attorney's Office for the District of New Jersey demanded that he plead guilty to felony charges in order to avoid prosecution and, if convicted, jail time.  Although Gentile never received a written guarantee as to the specific terms of any agreement with prosecutors, as the agreements were oral, he nevertheless felt betrayed by their decision and ultimatum given the entirety of the course of conduct between the parties.  Gentile always claimed his legal innocence throughout his cooperation, truthfully disclosing his conduct but never admitting to any legal determination, and always truthfully asserted that an attorney had advised that the alleged conduct was legal.

34.     In order to defend his innocence of the charges being brought against him and to preserve his ability to exercise his profession, he did not accept the plea deal that was offered to him by the Department of Justice and instead began the process of defending himself against the allegations.

Criminal and Civil Charges Against Gentile Are Dismissed as Time Barred

35.     On March 23, 2016, Gentile was indicted for criminal securities fraud based on allegations that, as early as April 2007 and through in or about June 2008, he participated in pump-and-dump stock manipulation schemes to fraudulently inflate the prices of shares of two different companies.

36.     On the same date, the Security and Exchange Commission filed a Civil Complaint ("SEC Civil Case") against Gentile in the United States District Court for the Southern District of New Jersey.  The allegations brought by the SEC related to the exact same alleged schemes from 2007 and 2008. The sanctions sought by the SEC were an obey-the-law injunction, disgorgement of "ill-gotten gains", civil penalties, and "a permanent prohibition from participating in any offering of penny stock."  The SEC's Civil Case was stayed during the pendency of the criminal matter.

37.     Gentile vigorously defended his rights using all of the legal arguments at his disposal, including statute of limitations grounds.

38.     The criminal indictment against Gentile was dismissed on January 30, 2017.  After the criminal indictment was dismissed, the stay on the SEC Civil Case was lifted.  Counsel for Gentile filed a motion to dismiss on statute of limitations grounds arguing that because all the alleged conduct occurred eight years before the complaint was filed, all of the claims, which sought to penalize Gentile for alleged historical conduct were time barred. The SEC Civil Case against Gentile was dismissed on December 13, 2017.

39.     The SEC has appealed the dismissal of the civil case. The appeal is *sub judice* as of the date of this Complaint.

40.     As of the filing of this Complaint, Gentile has no reports on his broker check. In an 18-year career in the securities and financial industry, Gentile has never had a single customer complaint filed against him. Gentile has never been sanctioned by any self-regulatory organization.

41.     In short, Gentile's professional record is spotless and beyond reproach.

OCFI

42.     OCFI advertises its mission as being to "[r]egulate, supervise and oversee Puerto Rico's financial system to: Ensure its safety, soundness, and global competitiveness; Promote the Commonwealth's socioeconomic development; and Protect the public interest."

43.     OCFI advertises its vision as being to "[m]aintain a modern and flexible financial system through policies that ensure balance and equity among the interests of: depositors, shareholders, investors, and the general public."

44.     Among its other functions, OCFI is tasked with investigating applicants wishing to set up an international financial entity under its jurisdiction. After its investigation, it can accept or deny the application, or request more information.

45.     The Commissioner maintains some, but not unlimited, discretion in deciding who is entitled to obtain a banking license to operate an international banking entity in Puerto Rico.

46.     Article 7 of the IFE Act in 7 L.P.R.A. § 3086(e), provides that "[s]hould the Commissioner determine that the results of his/her investigation are favorable, he/she may, at his/her sole and exclusive discretion, issue to the applicants a permit to organize an international financial institution, subject to such conditions as the Commissioner may establish."

47.     While the Commissioner maintains discretion under statutory law, his discretion is curbed by constitutional constraints.

48.     For example, the Commissioner may not deny an applicant a license because of that applicant's religion, race, or sexual orientation.  Nor may the Commissioner deny an applicant based on any other unconstitutional consideration.

49.     The process for submitting an application for an international financial institution is set forth under the IFE Act in 7 L.P.R.A. § 3086(a), which establishes the documents and information that must be submitted with an application to the OCFI and states that the application shall be in writing, in the form specified in the regulations of the Commissioner and shall be accompanied by:

1)   The proposed articles of incorporation, partnership agreement or other written document establishing the international financial institution or the certification required by § 3084 of this title;
2)   a nonrefundable application fee of five thousand dollars ($5,000), to defray the costs of the initial investigation; and
3)   such other documents as may be specified or required by the regulations of the Commissioner.

50.     In addition, IFE Act in 7 L.P.R.A. § 3086(b) provides that every application shall also include, in the form required by the regulations of the Commissioner:

1)   The identity and business history of the applicants;

2)   The city or town in Puerto Rico and the street and number or any other address where its principal place of business in Puerto Rico shall be maintained;

3)   the identity and business and credit history of any person who, directly or indirectly, possesses or controls or intends to possess or control ten percent (10%) or more in the capital of the proposed international financial institution;

4)   a statement of the assets and liabilities of any applicant and of any person who possesses or controls or intends to possess or control ten percent (10%) or more of the interest in the capital of the international financial institution, or of the person of which the proposed international financial institution shall be a unit, for each of the three (3) years preceding the application;

5)   the identity and background of all proposed directors, and officials or persons who intend to act in a similar capacity in the international financial institution; and

6)   such additional information as may be required by the regulations of the Commissioner."

51.     On May 3, 2017, BDO filed an application on behalf of Mint Bank to organize an

international financial entity pursuant to the terms of Act No. 273 of September 25, 2012 of the

International Financial Center Regulatory Act before OCFI.

52.     Mint Bank's application for a license was filled out by BDO who specializes in filing IFE

Applications and provides advice to clients as to exactly which documents were called for to

apply successfully for an international financial entity. Gentile understood that BDO and its staff,

which include certified public accountants and attorneys, would properly fill out his application

and include all documents and information that was requested without exception.  The

application process is long and difficult and requires tremendous effort and attention to detail.

Gentile worked with his hired professionals to fully answer every question and provide all

requested information and documents, including detailed business and growth plans.  The

original application filed by Mint Bank contained information that Gentile believed in good faith

and upon the advice of counsel, and included all required documents and information.  Gentile

also paid the required $5,000 non-refundable application fee. *See* Exhibit 1

53.     The existence of Gentile's criminal indictment and dismissal, as well as his being the

subject of a follow-up civil lawsuit by the Securities and Exchange Commission, had been

widely published in dozens of newspapers and magazines.  The existence of the indictment and

its dismissal, and his continued litigation with the Securities and Exchange Commission was

mentioned in Bloomberg, the New York Post, the Associated Press, Law360, the Nassau

Guardian, and numerous other publications.  In fact, it could appear that Gentile went out of his

way to publicize his legal disputes with the government in general, and specifically, the SEC.

54.     The international financial entity license application requested information about whether

Gentile had ever been arrested before.  For this reason, he disclosed all relevant information

about the indictment, and fully described the allegations contained therein. Gentile fully
disclosed to BDO the existence of the criminal indictment as well as the related SEC civil
complaint and specifically instructed BDO to include all requested information in the application
so that he could obtain an international financial entity license for Mint Bank, intended for
purposes of building his suite of financial customers and expanding his capacity to provide
financial services on their behalf.  BDO and its counsel read the application to not ask about the
existence of a civil law suit, and information about the SEC Civil Case was accordingly not
included in the application.

55.     Mint Bank's application to OCFI included the submission of a "Statement of Personal
History to be Submitted by Directors, Officers, Managers and Owners of International Financial
Entities."  *See* Exhibit 1.  Question 5B(2) on the Statement of Personal History that was
submitted by Gentile is as follows: "Have you ever been? Arrested, detained, charged, convicted
of any felony or of any fraudulent acts summoned to answer for any criminal offense or violation
for any reason whatsoever, regardless of the disposition of the event?"  In response to Question
5B(2), Gentile answered yes, because that was the accurate answer, and provided follow-up
information.  Question 5B(4) on the Statement of Personal History of Gentile asks "Have you
ever been?  Permanently or temporarily enjoined from engaging in or continuing any conduct or
practice related to any business by any competent court or government entity in any country."  In
response to question 5B(4) on the Statement of Personal History, Gentile answered no because
that was – at the time, presently, and at all times – the truthful and accurate answer. Gentile
provided a supplemental statement related to his arrest, indictment by the Department of Justice
for a securities fraud violation, and the dismissal of the charges against him.  *See* Exhibit 1.

While BDO and its counsel knew about the then pending SEC lawsuit against Gentile, they read question 5(B)(2) as not asking for information about any civil lawsuit.

56.     Upon Gentile's continuing interest in ensuring that OCFI was receiving all possible information they could be interested in, on May 25, 2017, BDO made a supplemental filing on behalf of Mint Bank and provided additional information about Gentile, including additional information about criminal securities charges that were brought against him by the Department of Justice but dismissed.  Further evidence was provided that related to Gentile's character, given that he has met standards of integrity in several contexts: as a firefighter, a police officer, a bail enforcement agent and as a recipient of a Tax Grant in Puerto Rico under Act 22 of 2012.  The tax grant, in particular, addresses Gentile's prospective income from or "consisting of interest, finance charges, dividend or partnership interest received from international banking institutions duly authorized under the Banking Center Act."

57.     At no time did Gentile believe that he had failed to provide requested information in connection with his application.  Gentile had no interest in hiding any information from OCFI, nor did he have any intention of doing so.  If he did (which he did not), he certainly would not have intended to hide information about himself that one could uncover immediately upon googling his name – such as the existence of a pending SEC civil lawsuit that addressed the same subject matter as the fully disclosed criminal indictment and which Gentile otherwise spoke openly of in the press.

58.     On December 12, 2017, a meeting took place between Mint Bank and the Auxiliary Commissioner of OCFI, Hon. Iris Nereida Jiménez and Gentile's counsel from the law firm of Adsuar Muñiz Goyco Seda & Pérez-Ochoa, PSC.  Given that Mint Bank had provided all relevant and requested information, and given Gentile's qualifications, he expected that his

license would be granted.  Instead, during this meeting, OCFI invited Mint Bank to withdraw its application to organize an international financial entity.

59.     The Hon. Jiménez gave two reasons for her recommendation that Mint Bank withdraw its application.  First, Hon. Jiménez stated OCFI's belief that Mint Bank did not have sufficient "commercial integrity."  This conclusion was based *solely* on the finding that Gentile had been accused of a crime by the government.  The Hon. Jiménez also noted that, because Gentile successfully argued for dismissal of the criminal indictment on statute of limitations grounds, he would never be able to prove his innocence.[2]  The existence of both the allegations and Gentile being now precluded from proving his innocence as to the underlying allegations, Gentile's counsel was informed, created an inference of guilt which was sufficient to deny him the license.

60.     Second, OCFI asserted at this meeting that Gentile's application was being denied because he failed to disclose the pendency of a civil law suit filed by the SEC against him.  Gentile's counsel explained that Gentile in no way intended to withhold any information, and believed, in good faith, that he had provided everything that was requested, which was in the hands of BDO and its staff, not Gentile.  Mint Bank's counsel explained that it was not fair to penalize Gentile for not providing information that he was perfectly willing to provide and that wasn't originally included based on the advice of BDO who believed it was not requested.

61.     Believing that the Commission could not properly reject his application based solely on alleged but unproven conduct, or the mere failure to provide information that was arguably not requested and a matter of public knowledge, Mint Bank refused to withdraw its application.

---

[2] See, Judge Linares' Order dated January 30, 2017, *United States of America v. Gentile*, 16 Cr. 155 (2016), and *US v. Gentile*, 235 F.Supp. 3d 329 (D.N.J. 2017).

62.    The very next day, December 13, 2017, the federal judge overseeing Gentile's case dismissed the SEC's Amended Complaint on statute of limitation grounds, thus ending any formal allegations of any misconduct whatsoever against Gentile.

63.    Shortly thereafter, on February 16, 2018, Hon. Jiménez denied Mint Bank's application for a permit to organize an International Financial entity under the IFE Act.

64.    As justification for its decision, OCFI concluded that Gentile "does not have the required commercial integrity to organize and operate an international banking entity under Act 273" and that "Mint Bank did not mention on its application a civil law suit filed by the SEC against Gentile …".  (The decision did <u>not</u> note that this civil law suit had just been dismissed).

65.    On March 8, 2018, Gentile filed an administrative appeal at OCFI of OCFI's denial of his application for an international financial entity license on the grounds that OCFI failed to consider the totality of the evidence in denying the application, made its decision based on impermissible inferences, and therefore made an arbitrary and capricious decision in violation of the basic constitutional norms of due process and equal protection.  Gentile did not request a hearing in connection with his appeal because he believed any such hearing in front of the agency would be futile given what he believed to be purely pretextual and unconstitutional reasons for denying the license, and because of the fact that the "hearing" would be in front of the same individuals who already denied his license, and due to his belief that this hearing would lack requisite constitutional safeguards.

66.    On June 5, 2018, the OCFI issued a final decision in reconsideration of Mint Bank's application for a permit (the "OCFI Final Order"). Exhibit 2

67.     The gravamen of OCFI's rejection of Gentile's application was his public speech that OCFI appears to consider offensive and not aligned with the agency's or the federal government's own views.

68.     Specifically, OCFI based its denial of Gentile's application on the basis (1) that he was quoted in a press statement using the word "fuck," (2) that he posted to the social media site "Instagram" a "meme" from the movie *Wolf of Wall Street* that said "fuck you all," (3) on another occasion, he noted his desire for a license plate on an expensive car that said "fuck the DOJ," and (3) that he made a statement to the press and an SEC staff attorney that he would expose corruption within the SEC organization if the SEC staff attorney continued to make false statements to the federal judge overseeing his case, as the SEC eventually acknowledged it had done.

69.     Gentile made the posts and statements to convey his personal beliefs regarding how one should live his life, and to express his distaste for the United States Department of Justice, because he believed that certain members within the Department treated him unfairly by leading him to believe promises they made to him, which they later unapologetically broke.  OCFI also based its decision, not just on this language and expression that it disagreed with, but also because "OCFI did not find subsequent publications wherein Gentile would have denied the statements in this publication."  OCFI found that it was justified in denying Mint Bank's application because Gentile "has expressed himself disrespectfully and used lewd language."

70.     In addition to denying the application based on Gentile's public speech, OCFI expanded its rationale to several other grounds to deny Mint Bank's application beyond its earlier rationale, which also included the pretextual reason that his application failed to include mention of a civil lawsuit that he was on record discussing in dozens of publications.  OCFI also denied the license

because Gentile had been indicted on securities fraud and successfully had the indictment

dismissed on statute of limitations grounds.[3]

71.     This Complaint follows.

## CAUSES OF ACTION

### First Cause of Action
### (Violation of the First Amendment and the Fourteenth Amendment to the United States Constitution) (Against OCFI)

72.     Plaintiffs incorporate by reference paragraphs 1 through 71 as if fully restated herein.

73.     The First Amendment to the United States Constitution, which is applicable to the States

through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging

the freedom of speech."

74.     Under the First Amendment, the government may not proscribe personal speech or

expressive conduct.

75.     The United States Supreme Court, in *Hess v. Indiana*, 414 U.S. 105, 107 (1973),

determined that the First Amendment prohibits a State from punishing the use of words or

language not within "narrowly limited classes of speech," which include obscenity and fighting

words.  Statutes that attempt to proscribe speech that do not fall into these categories, including

statutes that have been used by the States to censor the public use of the word "fuck", have been

struck down as unconstitutional in violation of the First Amendment.  *See Cohen v. California*,

403 U.S. 15, 26 (1971); *Hess v. Indiana*, 414 U.S. 105, 108-09 (1973).

---

[3] OCFI also denied the application for a few reasons that Gentile does not understand. For example, one additional reason was that Gentile said he had an agreement with the government but the government denies this.  Gentile does not know to what agreement this refers to.  Another reason was based on a statement made in an article that Gentile was quoted in, in which the journalist may have misrepresented a legal point, and that OCFI believes Gentile was under some obligation to correct. These rationales are purely pretextual, indeed they were included as rationales only after the original denial was issued in the Final Order.

76.     The OCFI final order impermissibly considered the Gentile's personal speech that is

protected by the First Amendment when it denied Mint's application for a license to form an

international financial entity.  In violation of the First Amendment, OCFI impermissibly

considered the following public personal statements that were made by Gentile:

- Gentile's statement to a Bloomberg reporter to the effect that "[r]emember the movie American Hustle?  It's kind of like that, with way more dirt and twists and f---ed-up shit";

- Gentile's statement to a Bloomberg reporter to the effect that "[t]he feds don't know who they got, bro / I'm going rogue";

- Gentile's statement to a Bloomberg reporter that he would like to have a license plate that says "F—YOUDOJ."

- Gentile's post of a *Wolf of Wall Street* meme on Instagram with the caption "F— YOU ALL."

- Gentile's statement to Bloomberg reporter that he intends to sue the government for damages.

- Gentile's letter to the Commission staff, threatening that if the Commission pressed its claims against him, he would make sure that the staff would not be able to practice law again.

77.     All other factors that OCFI included in its final decision as a reason for denying Gentile's

license were pretextual because OCFI's final decision was clearly based on a business integrity

judgment that was made based on Gentile's protected speech.

**Second Cause of Action**
**(Violation of the First Amendment and the Fourteenth Amendment to the United States**
**Constitution and of Federal Law under 42 U.S.C. § 1983)**
**(Against Commissioner of OCFI George R. Joyner Kelly and Auxiliary Commissioner Iris**
**Nereida Jiménez)**

78.     Plaintiffs incorporate by reference paragraphs 1 through 77 as fully restated herein.

79.     42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute,

ordinance, regulation, custom or usage, or any State or Territory or the District of Columbia,

subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or

other proper proceeding for redress …"

80.     Under the First Amendment, the government may not proscribe personal speech or

expressive conduct.

81.     OCFI Commissioner George R. Joyner Kelly, and its Auxiliary Commissioner Iris

Nereida Jiménez, impermissibly considered Gentile's personal speech that is protected by the

First Amendment when they authored the OCFI first administrative and OCFI Final Order in

which the agency denied Mint Bank's application for a license to form an international financial

entity.

82.     Thus, Commissioner George R. Joyner Kelly and Iris Nereida Jiménez violated Gentile's

constitutional right to freedom of expression, and the unlawfulness of their conduct was clearly

established at the time.

83.     All other factors that OCFI included in its final decision as a reason for denying Gentile's

license were pretextual because OCFI's Final Order was clearly based on a business integrity

judgment made based on Gentile's protected speech.

84.     OCFI's deprivation of Gentile's first amendment rights occurred under the color of

Puerto Rican law, speifically 7 L.P.R.A. § 3086(c)(1) and 7 L.P.R.A. §3086(e) and OCFI

Regulation 5653.

85.     Commissioner George R. Joyner Kelly and Auxiliary Commissioner Iris Nereida Jiménez

violated Gentile's clearly established First Amendment Rights and violated 42 U.S.C. § 1983.

**Third Cause of Action**
**(Violation of the First Amendment and the Fourteenth Amendment to the United**
**States Constitution in Retaliation for Protected Speech and of 42 U.S.C. § 1983)**
**(Against Commissioner of OCFI George R. Joyner Kelly and Auxiliary**
**Commissioner Iris Nereida Jiménez)**

86.     Plaintiffs incorporate by reference paragraphs 1 through 85 as fully restated herein.

87.     Under the First Amendment, the government may not proscribe personal speech or

expressive conduct.

88.     Under 42 U.S.C. § 1983, a person may not deprive any individual of a constitutional right

under the color of state law.

89.     Gentile "engaged in constitutionally protected conduct" and his "conduct was a

substantial or motivating factor for the adverse . . . decision." *See, e.g., McCue v. Bradstreet*,

807 F.3d 334, 338 (1st Cir. 2015) (citation omitted).

90.     Gentile's protected conduct was a 'substantial' or 'motivating' factor behind the denial of

the application.

91.     OCFI, through OCFI Commissioner George R. Joyner Kelly, and its Auxiliary

Commissioner Iris Nereida Jiménez, impermissibly considered Gentile's personal speech that is

protected by the First Amendment when they authored the OCFI first administrative decision and

OCFI Final Order in which the agency denied Mint Bank's application for a license to form an

international financial entity.

92.     Gentile's protected speech was a substantial and motivating factor that was behind the

OCFI Final Order that was signed by George R. Joyner Kelly and in the first administrative

decision that was that was signed by Iris Nereida Jiménez.  In at least three locations in the OCFI

Final Order, the agency states that Gentile's business integrity was judged to be "tainted" only

because he exercised his freedom of speech rights in making negative statements about

24

government entities such as the Department of Justice and the Security and Exchange Commission.  In fact, OCFI specifically references Gentile's protected conduct in reaching its decision to deny his application based on his "business integrity."  After referencing Gentile's protected speech, OCFI stated, in its Final Order, that it "is not satisfied with Mister Gentile's reputation and integrity because . . . his reputation is tainted."  Exhibit 2, p. 6 and 13.   OCFI also included a list of reasons that supported its denial of Gentile's application, which it said "inure[d]" from its first administrative decision on the Gentile application, including the fact that "after the criminal charges were dismissed, Mister Gentile participated in an interview wherein he made statements that undermined his alleged good reputation." Exhibit 2, p. 13.  Finally, in the "final determination" section OCFI again recalled "not complying with the criterion of 'commercial integrity,' as a criterion of public interest . . . may prevail over any other factor." Exhibit 2, p. 19-20.  All other factors that OCFI included in its final decision as a reason for denying Gentile's license were pretextual because OCFI's final decision was clearly based on a business integrity judgment that was made based on Gentile's Constitutionally protected speech. These three indications are clear evidence that Gentile's constitutionally protected speech was a substantial, motivating factors in the OCFI decision such that his constitutional right to freedom of speech was violated when the OCFI retaliated against him by denying Mint Bank's license.

93.    Thus, Commissioner George R. Joyner Kelly and Auxiliary Commissioner Iris Nereida Jiménez violated Gentile's constitutional right to freedom of expression and the unlawfulness of their conduct was clearly established at the time.  As a result, they also violated 42 U.S.C. § 1983.

94.    In addition, the SEC sent a secret communication to OCFI, which has not been shared with Gentile or his counsel, and communicated an SEC opinion that Gentile was likely to violate

25

securities laws.  Based on OCFI's description of it, the SEC letter appears to reference some of the same constitutionally protected speech that OCFI cited in finding that Gentile lacked the business integrity to be the leader of Mint Bank.  That the SEC sought to influence OCFI and very possibly did so based on Gentile's constitutionally protected speech, which reinforces the argument that OCFI retaliated against Gentile.

### Fourth Cause of Action
### (Violation of the Fourteenth Amendment: the OCFI Decision to Deny Mint Bank an International Financial Entity Permit Violates Substantive Due Process)
### (Against OCFI)

95.     The Plaintiffs incorporate by reference paragraphs 1 through 94 as if fully restated herein.

96.     The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law . . ."

97.     "A state cannot exclude a person from [ . . . ] [an] occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment". *Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232, 238-39 (1957).

98.     A violation of substantive due process is established where the state action at issue is arbitrary or capricious, run counter to "the concept of ordered liberty" or be "shocking or violative of universal standards of decency."  *Amsden v. Moran*, 904 F.2d 748, 753–54 (1st Cir. 1990) (citations omitted).

99.     To satisfy substantive due process requirements, moral character requirements included in licensing criteria must have a rational connection with the applicant's fitness to practice the licensed profession.  *Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232, 239 (1957).

100.    The reasons that OCFI provided for denying Mint Bank's application for a license, which relate to Gentile's business integrity, taken individually and collectively, are arbitrary and capricious, bear no rational relationship to Gentile's fitness to lead Mint Bank as an international financial entity, and shock the conscience and run counter to the concepts of ordered liberty in the United States, thus violating Gentile's substantive due process rights under the Fourteenth Amendment to the United States Constitution.

101.    First, OCFI violated the concept of ordered liberty and shocked the conscience when it based its decision to deny the application on the basis of Gentile not having "business integrity" merely because Gentile was previously indicted and had the charges dismissed on statute of limitations grounds.  In the United States, Gentile is innocent until proven guilty and no criminal court ever found him guilty of securities fraud.  *See Taylor v. Kentucky*, 436 U.S. 478, 490 (1978).  If the OCFI's final decision stands, Gentile would be forced to suffer severe professional consequences similar to those he would have incurred had he been convicted of criminal charges, notwithstanding that the government never proved that he engaged in any wrongdoing.  It is entirely counter to our system of government and ordered liberty to permit a government accusation to have the same effect on an individual as a criminal conviction and to find that he lacked the required commercial integrity to lead an international financial entity merely because of such an accusation of wrongdoing.  Furthermore, OCFI's argument that it is somehow relevant to its calculation that the criminal charges against Gentile were dismissed based on statute of limitations grounds rather than based on a determination of the case on the merits is without merit: as a matter of both fact and law, Gentile is innocent of any criminal wrongdoing in relation to the 2007 through 2008 schemes.  The alternative argument that OCFI proposes, that

Gentile is somehow guilty or has bad business integrity because he was indicted is incomprehensible, arbitrary and capricious, and shocks the conscience.

102.     Second, OCFI violated the concept of ordered liberty and shocked the conscience when it denied Mint Bank a license based on statements that Gentile made on twitter and to the press that used the word "fuck" to express his frustration with the Department of Justice and, more generally, with the wrongdoing by government federal employees that his government cooperation exposed.  Gentile's statements are simply his use of his First Amendment rights to vent his legitimate frustration with a government agency.

103.     Third, OCFI violated the concept of ordered liberty and shocked the conscience when it denied Mint Bank's license based on an SEC opinion letter that was sent to OCFI but never included in the public record or provided to Gentile, which apparently asserts that the SEC believes that Gentile has a propensity to violate securities laws.  This assertion is contrary to the finding of the federal judge overseeing the case who came to the opposite conclusion. As Junde Linares found in his decision dismissing the SEC's first amended complaint, "[s]imply alleging that Defendant violated securities laws does not lead the Court to conclude that Defendant is likely to violate securities laws in the future."  *Sec. & Exch. Comm'n v. Gentile*, 2017 WL 6371301, at *4 (D.N.J. Dec. 13, 2017).  Judge Linares implicitly concluded Gentile was not likely to imminently violate any securities laws when he dismissed the SEC's Amended Complaint. The SEC has no good faith basis to assert that it believes Gentile has a propensity to violate the securities laws in the future, and it shocks the conscience that a secret SEC opinion letter has been used to deny Mint Bank's license without Gentile being afforded an opportunity to review the letter or to rebut its contents.

28

104.    The OCFI's Final Order relies heavily on the fact that, in its initial application that was filed on May 12, 2017, Mint Bank did not include a disclosure about the pending SEC civil case against Gentile and "omitted information fundamental and relevant to the Government of Puerto Rico . . ."  Gentile prepared Mint Bank's application for an international financial entity license with the accountancy firm BDO.  His good faith in providing information to OCFI is highlighted by the fact that he did not try to hide the criminal charges that were brought against him and dismissed, and that he provided information to OCFI about the SEC Civil Case when he was informed by OCFI that he was required to do so. Denying the license on the basis that he failed to include a document that contained information of which the Commission was otherwise aware, was widely noted in the press, and provided immediately upon first request cannot form a legitimate basis of denial of the application.

**Fifth Cause of Action**
**(Violation of the Fourteenth Amendment: the Puerto Rico Statute and OCFI Regulations that were applied in denying Mint Bank's application for an international financial entity permit violations of substantive due process)**
**(Against OCFI)**

105.    The Plaintiffs incorporate by reference paragraphs 1 through 104 as if fully restated herein.

106.    The vagueness of the IFE Act and of OCFI regulation 5653 provide OCFI with unconstitutional discretion to deny permit applications for international financial entities based on reasons that violate applicants' substantive due process rights.

107.    Article 7 of IFE Act in 7 L.P.R.A. § 3086(e), provides that "[s]hould the Commissioner determine that the results of his/her investigation are favorable, he/she may, at his/her sole and exclusive discretion, issue to the applicants a permit to organize an international financial institution, subject to such conditions as the Commissioner may establish."

108.    OCFI may investigate the "financial solvency, credit, banking experience and business integrity" of the applicants, their directors and officers, and persons who intend to act in a similar capacity in the proposed international financial institution."  7 L.P.R.A. § 3086(c)(1).

109.    Neither the IFE Act nor OCFI Regulation 5653 shed light on the meaning of the vague term "business integrity," nor has OCFI established criteria by which such "business integrity" is to be evaluated or assessed.

110.    OCFI considered improper factors in evaluating Gentile's business integrity.

111.    OCFI's initial decision was made prior to any opportunity for a hearing.

112.    OCFI's Final Order violates the Constitution of the United States, and its actions are in excess of the statutory authority or jurisdiction of the agency, made upon unlawful procedures resulting in material prejudice, and is arbitrary and capricious.  It is therefore a decision that is not authorized by law.

113.    The same Administrative Commissioner may participate in the initial denial and the administrative appeal and the Puerto Rico statute provides for extremely limited review by the state courts.

114.    The Commissioner's process of reviewing Mint Bank's application registration does not provide the typical constitutional safeguards that one would find in a traditional judicial proceeding.

115.    Thus, the IFE Act and of OCFI Regulation 5653 shock the conscience and are void under the substantive due process clause of the United State Constitution.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand and pray that the District Court of Puerto Rico order the following against Defendants:

A. Hold unlawful as a violation of the First and Fourteenth Amendments to the United States Constitution the OCFI Final Order of June 5, 2018 according to which Gentile and Mint Bank were denied a license to establish an international financial entity in Puerto Rico on illegal grounds because the decision constitutes a violation of Gentile's freedom of speech;

B. Hold unlawful as a violation of the Fourteenth Amendment to the United States Constitution the OCFI Final Order of June 5, 2018 according to which Gentile and Mint Bank were denied a license to establish an international financial entity in Puerto Rico on illegal grounds because the decision constitutes a violation of Gentile's substantive due process rights;

C. Hold unlawful a violation of the Fourteenth Amendment to the United States Constitution the following sections of the IFE Act: 7 L.P.R.A. § 3086(c)(1) and 7 L.P.R.A. §3086(e);

D. Hold unlawful as a violation of the Fourteenth Amendment to the United States Constitution Article 6(2) of the OCFI Regulation 5653;

E. Compel OCFI to issue an international financial entity license to Mint Bank with no undue delay; or enjoin OCFI from continuing to deny the application without legal justification, and

F. Award Plaintiffs nominal, compensatory, and punitive damages for the harm they suffered as a result of OCFI's violations of their constitutional rights.

G. Award Plaintiffs attorneys' fees for such costs and expenses of this action, including reasonable attorneys' fees award, in accordance with 42 U.S.C. § 1988 and other applicable law.

Dated: New York, New York and
San Juan, Puerto Rico
July 3, 2018

Respectfully submitted,


/s/ Katarina Stipec-Rubio
Adsuar Muñiz Goyco Seda & Pérez-Ochoa, P.S.C.
208 Ponce de León Ave., Suite 1600
San Juan, PR 00918
Phone: (787) 281-1968


Adam Ford
Ford O'Brien LLP
575 Fifth Avenue, 17th Floor
New York, NY 10017
aford@fordobrien.com
Phone: (212) 858-0040
(pro hac vice pending)
*Counsel for Plaintiffs*