# EXHIBIT 1



BDO PUERTO RICO, PSC
1302 Ponce De Leon Ave.
1ST Floor
San Juan, Puerto Rico 00907
Tel: 787-754-3999
Fax: 787-754-3105
www.bdopr.com

BDO USVI, LLC
Foothills Professional
Building
9151 Estate Thomas,
Suite 201
St. Thomas, VI 00802
Tel:  340-776-0640
Fax:  340-779-8653
www.bdousvi.com

**HAND DELIVERED**

**COPY**

May 12, 2017

Ms. Iris Jiménez
Assistant Commissioner
Commissioner of Financial Institutions of Puerto Rico ("OCIF")
Centro Europa Building, 6th Floor
San Juan, Puerto Rico

PM1:00

OCIF Recepcion 19 MAY '17

RE:   MINT BANK INTERNATIONAL, LLC
       APPLICATION FOR PERMIT TO ORGANIZE AN
       INTERNATIONAL FINANCIAL ENTITY UNDER ACT 273 OF 2012, AS AMENDED

Dear Ms. Jiménez:

On behalf of our client of reference, **Mint Bank International, LLC** (the "Mint Bank International"),
and in connection with the Application for a permit to organize an International Financial Entity (the
"IFE Application") pursuant to Act No. 273 of September 25, 2012, amended (the "IFE Act") we
hereby submit the following documents for your consideration:

1.   Application for a Permit to Organize an International Financial Entity (IFE);
2.   Manager's Check number 002246 in the amount of five thousand dollars ($5,000.00)
     payable to the Secretary of Treasury, to cover the filing fees;
3.   Representation Letter signed by Adsuar, Muñiz, Goyco, Seda & Pérez-Ochoa, P.S.C.,
     Attorneys at law, enclosed as Exhibit IV.
4.   Sworn Statement of the Managing Member appointing BDO Puerto Rico, P.S.C. as the
     Authorized Representative of the Applicant, enclosed as Exhibit VII; and,
5.   Personal History Statement for Guy Gentile Nigro.

Should you have any questions regarding the enclosed documents or need additional information,
please no not hesitate to contact us at (787) 754-3999 ext. 2089 or at amaldonado@bdo.com.pr.

Respectfully submitted,

BDO PUERTO RICO, P.S.C.

Amarily Maldonado, Esq.
Senior Manager
Tax Advisory Services

Enclosures- As stated

BDO, Puerto Rico, PSC, a Puerto Rico Professional Services Corporation, and BDO USVI, LLC, a United States Virgin Island's limited liability Company, are members of
BDO International Limited, a UK company limited by guarantee, and form part of the international BDO network of independent member firms.

BDO is the brand name for the BDO network and for each of the BDO Member Firms.

THIS MULTI-TONE AREA OF THE DOCUMENT CHANGES COLOR GRADUALLY AND EVENLY FROM DARK TO LIGHT WITH DARKER AREAS BOTH TOP AND BOTTOM.

**1First Bank**

## Manager's Check

Check No. 002246

101-7147/2215

Purchaser: GUY GENTILE

Date: 04/20/2017

Pay    ***Five Thousand Dollars***********************************************************

To The
Order of:    SECRETARY OF TREASURY

**$5,000.00**

DOLLAR FIVE COMMA ZERO ZERO ZERO PERIOD ZERO ZERO

Valid for Six Months After Issue Date

Branch    809    Teller No. 08082

FDIC    DRAWN ON **FIRSTBANK**
SAN JUAN, PUERTO RICO

'NS-5001-0911R

REDACTED

40

PM 1:00

OCIF Recepcion 19 MAY '17



**OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS**

ESTADO LIBRE ASOCIADO DE PUERTO RICO
OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS

# Commissioner of Financial Institutions
### Government of Puerto Rico


## *APPLICATION FOR A PERMIT TO ORGANIZE AN INTERNATIONAL FINANCIAL ENTITY*


### GENERAL INSTRUCTIONS

1.  The application and a copy thereof must be filed with the Office of the Commissioner of Financial Institutions at the following address:

    Commissioner of Financial Institutions
    International Financial Entities
    Centro Europa, Suite 600
    1492 Ponce de León Ave.
    San Juan, PR  00907

    Telephone (787) 723-3131
    reglamentacion@ocif.gobierno.pr

2.  Please answer every question.  Handprint or type every answer.  If space available is insufficient, use a separate sheet identifying the exhibit properly.  If a question does not apply write N/A in the space provided.

3.  The application must be file together with the required filing fee and the additional documents enumerated in Section 3 of this application.

4.  No application shall be deemed filed until the filing fee is paid and all the required documents are submitted.

5.  For the purposes of this application, "APPLICANT" means the proponent, owner or control person.



**OCIF** OFICINA DEL
COMISIONADO
DE INSTITUCIONES
FINANCIERAS

ESTADO LIBRE ASOCIADO DE PUERTO RICO
OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS

# Commissioner of Financial Institutions
## Government of Puerto Rico

### *APPLICATION FOR A PERMIT TO ORGANIZE AN INTERNATIONAL FINANCIAL ENTITY*

### LEGAL BASIS

Act. No. 273 of September 25, 2012, known as the "International Financial Center Regulatory Act", empowers the Commissioner of Financial Institutions to prescribe the form and content of the application to be filed for a permit to organize an International Financial Entity.

---

1. GENERAL INFORMATION OF THE PROPOSED IFE:

---

A. Proposed name of the International Financial Entity:

   **Mint Bank International, LLC**

---

B. Proposed location:

   **1302 Ponce de León Ave.
   José Ramón Figueroa Corner,
   San Juan, PR 00907**

---

C. Proposed form of organization:

   **The IFE proposes to be organized as a limited liability company pursuant to the laws of the Commonwealth of Puerto Rico.**

---

D. Briefly describe the proposed business activities for the IFE:

   **The IFE will: (i) Accept deposits from foreign persons in checking accounts, as well as demand or fixed term deposits, including interbank demand deposits and fund deposits, or otherwise borrow money from international financial institutions and any foreign person; (ii) Make, procure, place, guarantee, or provide service to loans; (iii) Carry out any banking transactions allowed; (iv) Engage**

in any activity of a financial nature outside of Puerto Rico which would be allowed to be done, directly or indirectly, by a bank holding company or by a foreign office or subsidiary of a United States bank under applicable United States law; and, (v) Act as a clearing house in relation to financial contracts or instruments of foreign persons.

For more detail please refer to the "List of Proposed Eligible Activities Chart", hereby attached as Exhibit I.

E. Name of proposed directors, principal officers or managers

**Mr. Guy Gentile Nigro – Director and Chief Executive Officer**

2. <u>INFORMATION OF THE PROPONENTS, OWNERS OR CONTROL PERSONS ("APPLICANT"):</u>

A. Exact name, principal address, mailing address, if different, and telephone number of Applicant

**Exact name:**
Guy Gentile Nigro

**Principal and mailing address:**
REDACTED

**Telephone number:**
REDACTED

B. Authorized representative designated by the Applicant to file this application and to act as its authorized agent with the Commissioner

**BDO Puerto Rico, P.S.C**

**1302 Ponce de León Avenue,
José Ramón Figueroa Corner, First Floor,
San Juan, PR 00907**

C. Briefly describe the nature of the Applicant's business

**Mr. Guy Gentile is an executive with over 18 years of experience in the Financial Industry. The Applicant has acted as Chief Executive Officer and Director of MintBroker International, Ltd. (formerly known as "Swiss America Securities, Ltd.) and is engaged in providing several financial services. Mr. Gentile is the current owner of 3 financial institutions that are located in the United States and other foreign countries.**

D.  Name of directors and main executive officers of any other Applicant's affiliates engaged in offshore international financial business

**Not applicable.**

## NOTICE

This application is an official document, any misrepresentation or failure to reveal information requested by the Commissioner of Financial Institutions may be deemed to be sufficient cause for the denial or revocation of a permit or license.

The application to establish an international financial entity ("IFE") is divided in two stages.  The first stage encompasses the organization of the IFE.  Once the Office of the Commissioner of Financial Institutions ("OCFI") has reviewed the necessary documents and information to its satisfaction it issues a permit to organize the IFE.

The second stage begins after the permit to organize the IFE is issued. Once the OCFI has received and reviewed to its satisfaction the documents required for this second stage, the license is finally issued to the IFE together with a permit to commence operations.

Application to Organize an IFE
Page 5

---

### SWORN STATEMENT

The undersigned, being duly sworn, deposes and certifies he is the person is the person authorized by the applicant to apply for a permit to organize an International Financial Entity. Both, the undersigned and the Applicant, represent that the information filed herewith, including exhibits attached hereto, is current, true and complete.


April 21, 2017                                Guy Gentile Nigro
Date                                         Name of Applicant


BY _____ – Director and Chief Executive Officer
         Signature and Title of Authorized Representative


AFFIDAVIT NUMBER ___6584___


Sworn and subscribed to before me by Guy Gentile Nigro, of legal age,

single, entrepreneur, and resident of San Juan, Puerto Rico.


At San Juan, PR on this 21st day of April of 2017.

---

(SEAL)





Notary Public

---

3. <u>ADDITIONAL DOCUMENTS:</u>

---

Submit herewith as part of this application the following documents:

A.   Cover Letter attached to the application prepared by the IFE's legal advisor (who must be an attorney admitted to practice in Puerto Rico), and should include, as a minimum, the following: clear identification of the person seeking to establish the IFE; information about the Applicant, including place of residence and business, lines of business, name of the proposed IFE; general description and reasons to establish the IFE; specific list of the activities proposed for the IFE under Act No. 273-2012 and description of proposed capitalization.

**Please refer to the "Cover Letter", hereby attached as Exhibit II.**

B.   Business Plan for the proposed IFE.

**Please refer to the "Business Plan for the proposed IFE", hereby attached as Exhibit III.**

C.   Number of proposed employees; general information about the banking or financial experience of the officers and directors who will manage the IFE.

**The IFE will hire four (4) employees at its start-up phase. For the information regarding banking or financial experience of Mr. Guy Gentile, proposed Chief Executive Officer of the IFE, please refer to statement, hereby attached as Exhibit IV.**

D.   Proposed articles of incorporation, partnership agreement or other written document establishing the International Financial Entity if such is the case.

**Please refer to the "Mint Bank International, LLC's proposed Certificate of Incorporation", hereby attached as Exhibit V.**

E.   If the proposed IFE will be organized as a unit of another entity, must include the certification herein attached as Exhibit A.

**Not applicable.**

F.   Corporate resolution or its equivalent, authorizing the designated person by the Applicant to file this application.

**Please refer to "Corporate Resolution", hereby attached as Exhibit VI.**

G. Sworn statements of personal history and resume of all proposed directors, principal executive officers or persons who intend to act in a managerial capacity, and of those who possess or intend to possess or control ten percent (10%) or more of the interest in the capital of the proposed International Financial Entity.

**Please refer to "Statement of Personal History to be Submitted by Directors, Officers, Managers, and Owners of International Financial Entities Form", hereby made part of this Application.**

H. Copy of the Applicant's individual income tax return for each of the Three (3) years preceding the application.

**Please refer to statement hereby attached as Exhibit VII.**

I. A bank money order or check, in the amount of five thousand dollars (USD $5,000) payable to the Secretary of the Treasury as a non-refundable application fee.

**Please see attached manager's check number 002246 in the amount of $5,000.00 payable to the order of the Puerto Rico Secretary of Treasury.**

J. Explain the organizational structure of the proposed International Financial Entity, including the number and title of the employees who will be engage in the operations.

**Please refer to proposed organizational structure illustration hereby attached as Exhibit VIII.**

The applicant hereby agrees as long as the application is under consideration that it will:

K. Notify the Commissioner of Financial Institutions of any change in the information contained herein or in any of the documents submitted with or as part of this application.

**The Applicant hereby agrees to do so.**

L. Furnish all such additional information and documents in respect to the Applicant as may be requested by Commissioner of Financial Institutions.

**The Applicant hereby agrees to do so.**

# Exhibit I

**MINT BANK INTERNATIONAL LLC**
**STATEMENT ATTACHED TO AND MADE PART OF THE**
**APPLICATION FOR PERMIT TO ORGANIZE AN IFE**

List of Proposed Eligible Activities -Question 1(D)

| BUSINESS | SECTION IFE ACT 273-2012 |
|---|---|
| Upon authorization of the Commissioner, accept deposits from foreign persons in checking accounts, as well as demand or fixed term deposits, including interbank demand deposits and fund deposits, or otherwise borrow money from international financial institutions and any foreign person pursuant to the Regulations of the Commissioner. Every international financial institution may borrow money on loan, provided, that said transactions are not tantamount to the acceptance of deposits. | 12(a)(1) of the IFE Act |
| Make, procure, place, guarantee, or service loans; none of such loans may be granted to a domestic person, except as provided with regard to the activities described in clauses (3), (7), (18), (19), (20) and (21) of subsection (a) of the IFE Act, and in the cases of financial guarantees for debt issuance transactions in Puerto Rico, subject to the Commissioner's approval. | 12(a)(4) of the IFE Act |
| Carry out any banking transactions allowed by the IFE Act in the currency of any country, or in gold or silver, and participate in foreign currency trade. | 12(a)(8) of the IFE Act |
| Underwrite, distribute, and otherwise trade in securities, notes, debt instruments, drafts, and bills of exchange issued by a foreign person for final purchase outside of Puerto Rico. | 12(a)(9) of the IFE Act |
| Engage in any activity of a financial nature outside of Puerto Rico, which would be allowed to be done, directly or indirectly, by a bank holding company or by a foreign office or subsidiary of a United States bank under applicable United States law. | 12(a)(11) of the IFE Act |

| | |
|---|---|
| Buy and sell securities outside of Puerto Rico, to the order of, or at its discretion, for foreign persons and provide investment advice in relation to such transactions or separate therefrom, to such persons. | 12(a)(14) of the IFE Act |
| Act as a clearinghouse in relation to financial contracts or instruments of foreign persons, as authorized by regulations adopted by the Commissioner. | 12(a)(15) of the IFE Act |
| Engage in such other activities as are expressly authorized by the regulations or order of the Commissioner, or are incidental to the execution of the services authorized by the IFE Act and the Regulations. | 12(a)(17) of the IFE Act |
| Upon authorization of the commissioner, provide to other international financial institutions or to foreign persons outside of Puerto Rico, those services of a financial nature, as these are defined and generally accepted in the banking industry of the United States and Puerto Rico and which are not listed in Section 12(a) of the IFE Act. | 12(a)(23) of the IFE Act |

# Exhibit II

# AMG

**ADSUAR MUÑIZ GOYCO SEDA & PÉREZ-OCHOA, PSC**
Attorneys and Counselors at Law

Popular Center
208 Ponce de León Ave.
Suite 1600
San Juan, Puerto Rico
00918
**www.amgprlaw.com**

PO Box 70294
San Juan, Puerto Rico
00936-8294

**Tel** 787.756.9000
**Fax** 787.756-9010

<u>HAND DELIVERED</u>

May 3, 2017

Ms. Iris Jiménez
Assistant Commissioner - Regulations and Licenses
Office of the Commissioner of Financial Institutions of Puerto Rico ("OCIF")
1492 Ponce de León Avenue,
Centro Europa Building, 6th Floor
San Juan, Puerto Rico 00907-4024

RE:    MINT BANK INTERNATIONAL, LLC
       APPLICATION FOR PERMIT TO ORGANIZE AN IFE

Dear Ms. Jiménez:

On behalf of our client, Mint Bank International LLC's member identified below and the proposed International Financial Entity, Mint Bank International LLC (hereinafter referred to as "Mint Bank International"), and based on Applicant's (as defined below) representation to us, we submit herein the following information as part of the Application for a Permit to Organize an International Financial Entity under Act 273 of September 25, 2012, known as the *International Financial Center Regulatory Act,* as amended (the "IFE Act"):

   A.  **Information about the Applicant and Identification of the Persons Seeking to Establish the Proposed International Financial Entity**

The initial member of Mint Bank International is, Guy Gentile Nigro (hereinafter referred to as the "Member", "Applicant" or "Mr. Gentile"). Additionally, Mr. Gentile will act as the director of Mint Bank International.  Mr. Gentile engages in providing financial services including, broker-dealer activities and investment advisory to financial institutions.

For the past 18 years, Mr. Gentile has acted as Chief Executive Officer and Director for companies in the Financial Industry, among them, MintBroker International, Ltd. (formerly known as Swiss America Securities, Ltd.) ("MintBroker").  MintBroker was incorporated under the laws of the Commonwealth of The Bahamas as a limited liability company on September 10, 2008.  MintBroker is registered as a broker-dealer Class II with the Securities Commission of The Bahamas.  MintBroker engages in providing services and functions as a broker-dealer and securities investment advisor.  The principal place of business REDACTED

Mr. Gentile, is the current owner of a group of financial institutions located in the United States and other foreign countries ("Group").  The Group consists of MintBroker and its wholly-owned subsidiaries, SWS Holdings Ltd. ("SWS H"), Swiss America Custody, Limited ("SAC") and Swiss America Securities UK, Ltd.  The principal activity of SWS H is holding accounts with clearing firms on behalf of MintBroker. The principal activity of SAC is custody of funds on behalf of the Company.

**ADSUAR MUÑIZ GOYCO SEDA & PÉREZ-OCHOA, PSC**
Attorneys and Counselors at Law

Ms. Iris Jiménez
May 3, 2017
Page **2** of 4

### B.  General Descriptions and Organization of the International Financial Entity

The IFE will: (i) Accept deposits from foreign persons in checking accounts, as well as demand or fixed term deposits, including interbank demand deposits and fund deposits, or otherwise borrow money from international financial institutions and foreign person; (ii) Make, procure, place, guarantee, or provide service to loans granted to non-PR or non-domestic persons, except as otherwise authorized under the IFE Act; (iii) Carry out any banking transactions allowed; (iv) Underwrite, distribute, and otherwise trade in securities issued by a foreign person for final purchase outside of PR; (v) Engage in any activity of a financial nature outside of Puerto Rico which would be allowed to be done, directly or indirectly, by a bank holding company or by a foreign office or subsidiary of a United States bank under applicable United States law; (vi) Buy and Sale securities outside of PR; (vii) Act as a clearing house in relation to financial contracts or instruments of foreign persons; (viii) Provide services of financial nature to other international financial entities; and, (ix) engage in other activities that are incidental to the execution of the services authorized by the IFE Act.

### C.  List of Proposed Activities for the IFE

Mint Bank International will be organized to perform the proposed eligible activities permitted by the IFE Act listed below:

1.  Upon authorization of the Commissioner, accept deposits from foreign persons in checking accounts, as well as demand or fixed term deposits, including interbank demand deposits and fund deposits, or otherwise borrow money from international financial institutions and any foreign person pursuant to the Regulations of the Commissioner.  Every international financial institution may borrow money on loan, provided, that said transactions are not tantamount to the acceptance of deposits, in pursuance of Section 12(a)(1) of the IFE Act.

2.  Make, procure, place, guarantee, or service loans; none of such loans may be granted to a domestic person, except as provided with regard to the activities described in clauses (3), (7), (18), (19), (20) and (21) of subsection (a) of the IFE Act, and in the cases of financial guarantees for debt issuance transactions in Puerto Rico, subject to the Commissioner's approval, in pursuance of Section 12(a)(4) of the IFE Act.

3.  Carry out any banking transactions allowed by the IFE Act in the currency of any country, or in gold or silver, and participate in foreign currency trade, in pursuance of Section 12(a)(8) of the IFE Act.

4.  Underwrite, distribute, and otherwise trade in securities, notes, debt instruments, drafts, and bills of exchange issued by a foreign person for final purchase outside of Puerto Rico, in pursuance of Section 12(a)(9) of the IFE Act.

5.  Engage in any activity of a financial nature outside of Puerto Rico, which would be allowed to be done, directly or indirectly, by a bank holding company or by a foreign office or subsidiary of a United States bank under applicable United States law, in pursuance of Section 12(a)(11) of the IFE Act.

**ADSUAR MUÑIZ GOYCO SEDA & PÉREZ-OCHOA, PSC**
Attorneys and Counselors at Law

Ms. Iris Jiménez
May 3, 2017
Page **3** of 4

6.  Buy and sell securities outside of Puerto Rico, to the order of, or at its discretion, for foreign persons and provide investment advice in relation to such transactions or separate therefrom, to such persons, in pursuance of Section 12(a)(14) of the IFE Act.

7.  Act as a clearinghouse in relation to financial contracts or instruments of foreign persons, as authorized by regulations adopted by the Commissioner, in pursuance of Section 12(a)(15) of the IFE Act.

8.  Engage in such other activities as are expressly authorized by the regulations or order of the Commissioner, or are incidental to the execution of the services authorized by this Act and the Regulations of the Commissioner except those expressly prohibited by the IFE Act, in pursuance of Section 12(a)(17) of the IFE Act.

9.  Upon authorization of the commissioner, provide to other international financial institutions or to foreign persons outside of Puerto Rico, those services of a financial nature, as these are defined and generally accepted in the banking industry of the United States and Puerto Rico and which are not listed in Section 12(a) of the IFE Act, in pursuance of Section 12(a)(23) of the IFE Act.

### D.  Description of Proposed Capitalization

In connection with Mint Bank International's start of business, sufficient capital will be contributed to Mint Bank International by the Member.  The Applicant will comply in all respects with the Office of the Commissioner of Financial Institutions' capital requirements as stated under Article 5(b) of the IFE Act. Accordingly, the amount of authorized capital will not be less than five million dollars ($5,000,000) and at least two hundred and fifty thousand dollars ($250,000) that shall be fully paid-in at the time the IFE license is issued.

Likewise, Mint Bank International will act in accordance with Article 8(a)(7) of the IFE Act in respect with having at least three hundred thousand dollars ($300,000) in unencumbered assets or acceptable financial guarantees.

Respectfully,

Miguel Carbonell, Esq.
Adsuar, Muñiz, Goyco, Seda & Pérez-Ochoa, PSC

Enclosures-
As stated

{AMG: 392030.DOCX v.2}

# Exhibit III

# MINT BANK INTERNATIONAL, LLC
# IFE BUSINESS PLAN

### I.       Executive Summary

Mint Bank International, LLC (hereafter referred to as "Mint Bank" or "the Company") is being organized as an international financial entity ("IFE"), pursuant to Section 5(c) of Act No. 273 of September 25, 2012, also known as the International Financial Center Regulatory Act ("IFE Act") and Act 164 of December 16, 2009, also known as the Puerto Rico General IFEs Law, for the purpose of engaging in certain international financial businesses permitted by the IFE Act.

Mint Bank will: (i) Accept deposits from foreign persons in checking accounts, as well as demand or fixed term deposits, including interbank demand deposits and fund deposits, or otherwise borrow money from international financial institutions and foreign person; (ii) Make, procure, place, guarantee, or provide service to loans granted to non-PR/domestic persons, except as otherwise authorized under the IFE Act; (iii) Carry out any banking transactions allowed; (iv) Underwrite, distribute, and otherwise trade in securities issued by a foreign person for final purchase outside of PR; (v) Engage in any activity of a financial nature outside of Puerto Rico which would be allowed to be done, directly or indirectly, by a bank holding company or by a foreign office or subsidiary of a United States bank under applicable United States law; (vi) Buy and sale securities outside of PR; (vii) Act as a clearing house in relation to financial contracts or instruments of foreign persons; (viii) Provide services of financial nature to other international financial entities; and, (ix) Engage in other activities that are incidental to the execution of the services authorized by the IFE Act.

The organizer of Mint Bank is Guy Gentile Nigro and the Company will initially be located in 1302 Ponce de León Avenue, José Ramón Figueroa Corner, San Juan, PR, 00907. This address is a temporary address during the organization period of the Company. Mint Bank will subsequently indicate its permanent place of business in Puerto Rico to the Office of the Commissioner of Financial Institutions ("OCFI").

Mint Bank will be managed by a Board of Directors; whose initial member is:

> ➢   Guy Gentile Nigro

Mint Bank, upon receipt of the IFE license to conduct business issued by OCFI, intends to expand its Board of Directors to include qualified Puerto Rican individuals having experience with international financial business transactions.

The Organizer is being proposed as the President and Chief Executive Officer of Mint Bank. The Board of Directors and the officers shall be referred to herein as the Management. The duties and responsibilities of the Management are fully described in Part IX of this Business Plan.

The Organizer is actively interviewing accounting and legal professionals to work for Mint Bank. At the outset, however, it is anticipated that the Company shall engage the services of

BDO Puerto Rico, P.S.C. for accounting services, and the law offices of Adsuar, Muñiz, Goyco, Seda & Pérez- Ochoa, P.S.C.


## II.    Operational Philosophy

The Organizer has extensive experience in lending, credit origination, proprietary investing, and credit servicing business, including many years of experience working as the CEO/Director of Stock USA Investments, Inc. since 1999 and Swiss America Securities, Ltd., since 2011. The Organizer also owns additional entities, with comprise from high end restaurants to commercial buildings in New York and Florida. As a result of that experience, the Organizer will be directly responsible for the day-to-day operations of the Company. He will be in charge of the Company's performance, adequacy of its internal controls and regulation compliance, as well as current matters and policies affecting the industry in general. He will be able to direct and supervise the Company effectively and responsibly. The Organizer will manage the Company's staff and make sure that the personnel adheres to the Company's guidelines.


## III.    Start-Up Phase

Initially, Mint Bank will accept deposits, make loans, manage assets, provide valuation and operational advice and consultation regarding matters typically provided by investment banking, and make proprietary investments of the type typically made by investment and merchant banking institutions. At the outset, the Company's main business will be carry out banking transactions including accept deposits from foreign persons, and make, procure, place, guarantee, or service loans, as authorized by Article 12(a)(1) and Article 12(a)(4) of the IFE Act.

Accordingly, it's anticipated that the primary uses of its funds will be reimbursement of expenses required for the startup of the Company's Office, initial operations, and the acquisition of the Company initial investments.  Mint Bank projects that the initial startup cost will include but are not limited to: Working Capital, property and equipment, insurance and miscellaneous and unforeseen costs.


## IV.    Mature Phase

Following the successful creation of Mint Bank, and execution of the business plan, the Company intends to provide financial services to third parties. The Company's clientele will be located outside of Puerto Rico. The Company will generate the majority of its revenues through asset management fees, consulting fees, principal transactions in which the Company invests its own capital, and loans made to foreign borrowers.

Mint Bank will serve its clients by providing a full line of assets management services, as well as engaging in investment banking activities such as making loans, equity investments, and accepting deposits.

The preceding description of the Company's business is not intended to exclude any reasonable opportunity that is otherwise congruent with the Company's business strategy, and the Company may seek the OCFI's approval to expand its business should an appropriate opportunity arise.

Mint Bank will possess a significant level of capital and its managers and executive officers will have extensive experience in operating asset management, principal investing, and investment and operational consulting operations, all as contemplated herein. The Company will utilize this expertise and experience to create and manage a sound institution which should have a life well beyond the life of the Organizer and the other initial members.

## V.      Proposed Capitalization

In connection with Mint Bank's start of business, sufficient capital will be contributed into the Company to ensure the institution is well-capitalized. Capital will comply in all respects with OCFI policies, and a minimum amount of equity capital is anticipated to be $5,000,000 of which at least $250,000 shall be in the form of cash, cash equivalents and certificates of deposit (some of which shall be pledged to OCFI in accordance with its current policies). In addition, the Company will have a bank account with a minimum of $550,000, from which $300,000 will be pledged to OCFI.

Mint Bank may issue notes, preferred shares of stock, and both voting and non-voting shares of stock. The initial shareholder of the Company shall be as follows:

| Ownership | Interest |
|---|---|
| Guy Gentile Nigro | 100% |

In the future, as the Management is expanded, it is likely that the Company may need to provide ownership interests to management pursuant to a Management Incentive Plan; however, no such plan is in place at this time and no such plan will be put into place without the prior consent of the OCFI.

Finally, to the extent additional capital is required, either the Organizer will seek to procure approval and consent to the same from the OCFI, or the business of the Company shall be decreased such that the capital available from the Organizer set forth above is sufficient.

## VI.    Description of Business: Mission Statement

Mint Bank's strategy is to build a premier asset management and a merchant and investment banking business for markets located outside of Puerto Rico, yet product development and servicing are to be provided primarily by Puerto Rican professionals and companies. Management will at all times be focused on profitability, risk management, revenue diversity, asset mix diversity, investment quality, and professional quality of its employees and managers. The Company's headquarters will be located in San Juan, Puerto Rico.

## VII.    Operating Divisions

Asset Management: Mint Bank intends to ensure that its asset management products are in conformity with industry standards, and will outsource any functions that cannot be provided at such a level by the Company's professionals (either due to the absence of experience of such managers, or due to economic efficiency standards).

Merchant Banking: Mint Bank intends to make commercial (non-consumer) loans to third parties. Such loans shall be considered with the utmost of diligence and always with a mind towards collateral and cash-flow coverage sufficient to repay any loans made by the Company (with appropriates stress testing for even more adverse market conditions than currently exist). With respect to the lending activities of the Company, management's mantra will be "never lose principal". It is expected that, absent an extremely unusual circumstance (such as inordinately significant liquidity of the prospective borrower and/or guarantors) all loans will be significantly collateralized, and guaranteed.

Investment Banking:  Mint Bank may purchase distressed commercial and consumer assets, via the acquisition of portfolios of assets, or from the acquisition of interests in companies owning such assets. Such investments will be evaluated on a case by case basis. In addition to distressed assets, the Company may also invest in other asset classes such as distressed real estate and securities (both public and private).

Accept Deposits: Mint Bank intends to accept deposits from foreign persons in checking accounts. The accounts will be designated for receipts and payments relating to a trading, operational or investment activity. The purpose of the account is to enable the account holder (company or individual) to receive and pay money internationally with ease and efficiency. The accounts are multi-currency and may be established in any mayor world currency.

## VIII.    Economic Component:

The economy of Puerto Rico is closely linked to the United States economy. Consequently, factors that impact the US economy also have great influence in the local economy. Some of those economic variables are oil prices, interest rates, US direct investment, US exports, and US inflation.

During 2006 a recession began and was not until December 2011 when for the first time the economy returned to growth. It showed small but consist year-over-year gains for nearly a year before beginning to retreat again in late 2012. The slight growth in fiscal year 2012 were due mainly to the large amount of stimuli and deficit spending injected in the Puerto Rico economy during this period.

Puerto Rico's economy is still on shrinking pace since November 2012. Per the Planning Board's numbers, Puerto Rico real gross national product ("GNP") for fiscal years 2014 and 2015 decreased by 1.7 percent and 0.6 percent, respectively. The Planning Board is projecting that the economy will contract for fiscal year 2016 and 2017 by 1.8 percent and 2.3 percent, respectively. In order to further reduce the volatility of the Index, the Economic Analysis Division is testing different seasonal adjustment procedures, which will allow more reasonable month over month comparisons for the monthly observation of the index.

Puerto Rico has changed from an agricultural economy, based primarily on sugar, tobacco, and coffee products, to a thriving modern industrial and services oriented economy. In 1940, agriculture represented 33.7 percent of total net income, while manufacturing had 12.8 percent of the total. Nevertheless, during 2014 agriculture composed 0.8 percent of total net income while manufacturing made up 46.7 percent of the total. The service sector is the second largest sector, with 43.5 percent of total net income. The transformation towards the industrial and services sectors have taken place in a period of over four decades. During this time structural changes have also occurred, as is the case of the manufacturing sector. This sector gradually changed from one of labor-intensive industries in the first stages of development to one of capital-intensive industries. In the last ten years this structural change intensified with the significant reduction of labor-intensive industries and the development not only of capital-intensive industries but also of knowledge intensive industries, such as biotechnology.

## A. Industry Analysis

Industry Overview – Puerto Rico

Bank (finance) sector is part of Puerto Rico's service sector. This sector is of great prominence, accounting for 44.1 % of Puerto Rico's gross domestic product ("GDP") in 2015. Similar to any other state of the union, Puerto Rico's financial sector is also fully integrated in to the US financial system. Federal regulations govern the sector being a constituent part of the jurisdiction of the Federal Reserve Bank of New York, responsible for implementing monetary policy enacted by members of the Federal Reserve Board in Washington, D.C. throughout the United States.

This sector has expanded in terms of income over the past decade, following the general trend of other industrialized economies, but with difference on the magnitudes of those changes. Puerto Rico has a developed banking and financial system. As of September 30, 2016, here were nine commercial banks operating in the Island. The OCFI reported $57.8

billion as total assets of commercial banks on September 30, 2016 as compared to $56.5 billion reported in December 31, 2015.

Broker-dealers in Puerto Rico are regulated by the Financial Industry Regulatory Authority ("FINRA"), the United States Securities and Exchange Commission ("SEC") and the OCFI, and are mainly dedicated to serve investors that are resident of Puerto Rico. According to the OCFI, assets under management by broker-dealers totalized $1.0 billion in June 30, 2016, as compared to $1.1 billion on December 31, 2015. Another relevant component of the financial sector in Puerto Rico is the investment company industry. According to the OCFI, local investment companies had recorded assets under management of $6.7 billion as of September 30, 2016.

Other components of the financial sector in Puerto Rico include international banking entities ("IBEs"), credit unions ("cooperativas"), and IFEs. IBEs are licensed financial businesses that conduct offshore banking transactions. As of September 30, 2016, there were 30 IBEs operating in Puerto Rico, with total assets of $56.7 billion, an increase from $53.6 billion in total assets as of December 31, 2015. Meanwhile, credit unions, which tend to provide basic consumer financial services, reached $8.5 billion in assets as of June 30, 2016. Also, IFEs has experienced strong growth since 2013 with six operating licenses approved in 2013, nine in 2014, eight in 2015 and six as of June 30, 2016. As of March 31, 2016, IFEs had total assets exceeding $395 million with total capital of $158 million and net income of $2.2 million.

## IX.    Management-Managers and Officers

The following is a brief description of the proposed organizers, managers and executive officers of the Company, each of whom has a strong business and financial background.

Board Committees:

It is anticipated the Board of Directors will not form any special committees until the Company shall begin to provide asset management services to third parties. In order to control risk during such period, the Company shall not invest in any asset or take on any client or business whatsoever without the approval of the CEO.

Duties and Responsibilities:

**Board of Directors-** Initially the Board of Directors will primarily be focused on the following:

- Establish the Company and apply for and receive an IFE License from OCFI.
- Prepare customized strategic business plan of the Company.
- Strategic planning and overall direction of the Company.
- Identification of broad competitive factors and the Company's response thereto.

- Identification of potential strategic partnerships.
- Review of Business Lines and Clientele.
- Board level marketing direction (to the extent needed later in the evolution of the Company's growth).

**Chief Executive Officer ("CEO")** - The CEO will be responsible for ensuring the financial stability and soundness of the Company so that it may continue to provide its clients and owners with quality financial products. The CEO will oversee the daily operations and encourage appropriate growth of the Company through effective management and leadership, including staff management, effective implementation of Board policies, objectives and maintaining the safety and soundness necessary to protect the shareholders' investment. The CEO will be responsible for the preparation and implementation of a strategic plan and budget, insurance coverage, personnel, funding activities, liquidity, capital maintenance, client relations, marketing, expansion, and compliance with all applicable laws, rules and regulations. The CEO will also coordinate all meetings and interaction with the Board of Directors, members of the Company, regulators and auditors. The CEO will also be responsible for acquiring and servicing a quality asset management, investment and lending platform, while maintaining a high degree of transparency to the Company's clients, as well as ensuring a profitable return for the Company.

**Chief Financial Officer ("CFO")** - The CFO will be responsible for directing activities of finance administration, overseeing all accounting and related activities, and developing and implementing financial policies and procedures. The CFO's duties include preparation of all management, member and regulatory reports necessary for the Company. The CFO will also be responsible for oversight of the Company's investment securities, insurance programs, capital expenditures, facilities, asset and liability management (to include concentrations, stress testing, funding strategies, and liquidity), internal controls, compliance, information technology, tax strategies, external auditors and examiners.

**Chief Operating Officer ("COO")** - the responsibilities of the COO shall be performed by the CEO/CFO until the Company's operations are of such a significance that a COO shall be required, Management shall engage in a search for a qualified candidate. The COO will be responsible for management and compliance of the Company's operations, information technology, human resources, internal audit and regulatory compliance. The COO will be responsible for and oversee the activities of the Operations/IT and other backroom operations of the Company. The COO will report directly to the Chief Executive Officer. Specific duties and responsibilities of the COO will include: identifying, implementing and monitoring appropriate Internet and other information technology to support the Company's operational objectives: assuring internal control policies are in place and followed regarding internal auditing, risk assessment, and other related compliance activities; directing compliance management processes and programs; directing human resources and payroll processes and programs; managing and developing operations, HR, IT, internal audit and compliance personnel; providing expert analysis, evaluation and application of regulation; and expediting responses and requests for clarifications arising from regulatory examinations and inquiries.

Succession:

Management has significant depth and experience in the business segments that the Company has identified and set forth herein. The Company intends to hire experienced professionals to fill the higher-level position openings. The Company intends to obtain training through a number of channels such as seminars, classes, video, in-house and internet, as is appropriate, available and cost-effective. The Company's intent will be to groom, train and promote from within where feasible. As the Company's business grows and/or other needs arise, the Company will seek out experienced individuals from outside the organization to supplement its staffing needs.

Transactions with Affiliates:

No transactions with affiliates outside of the normal course of business are currently anticipated, other than utilizing existing/new business relationships at an affiliate.

## X.      Records, Systems and Controls

Accounting:

Mint Bank intends to use systems provided by QuickBooks Pro initially (or systems similar those described hereinafter).  Management is quite familiar with QuickBooks Pro, which will be adequate to satisfy Management's informational needs for the Company. Management will be provided with monthly, quarterly and annual financial and management reports setting forth at a minimum the following reports (in accordance with generally accepted accounting principles):

- Balance Sheet
- Income Statement
- Statement of Cash Flows
- Budget (and actual performance vs. Budget)
- Assets under Management
- Asset Inventory (including, Asset Mix, Concentration and Correlation)
- Portfolio Performance Reports
- Summary of Significant Contractual Obligations
- Summary of Contractual Compliance Notifications (whether required to be given or received)
- Pipeline Report (reflecting investments under consideration, their capital requirements and their status within the Company's evaluation process)
- Risk Management Report

Internal Control Systems:

The Board of Directors and the Company's management will use internal control systems to safeguard the Company. These will be consistently reviewed and revised as appropriate to achieve goals and effect change as the environment moves. This includes the policies, procedures, and systems used by Management.

Mint Bank's internal control goal is to achieve effective systems for the following: management of risk, accurate financial reporting, compliance with laws, rulings, regulations, and policies, and transaction recordation. Controls should be in place for various functions and may include the separation of duties, internal and external reviews and testing, limits on investment expenditure, and contractual obligation authorities, safety and accuracy of records. Internal controls to be implemented at the Company include the following:

*Internal Audit Function:* The objective of the internal audit program is to determine that internal checks and controls provide adequate methods (1) to ensure the Company's general operating efficiency and safeguarding of its assets, and (2) its compliance with managerial policies, laws, regulations, and accepted accounting principles. The audit staff will have or attain adequate appropriate levels of training and experience for their various tasks according to industry standards and under the authority of the Board of Directors (likely, an Audit Committee function once committees of the Board are created) with assistance from the CFO of the Company and external audit and compliance entities.

Audits will be conducted by evaluating the control system and by testing the Company's records, procedures, and controls to determine if they meet industry standards. Comply with the Company policy and fulfill legal and regulatory requirements. Audit procedures will also include testing of procedures and control systems for weaknesses. Audits will be scheduled as standards and policy guidelines with routine follow up for areas of weakness or concern.

Audit staff will maintain accurate records of their activity and report to the Board of Directors (or an Audit Committee function once committees of the Board are created) with findings and recommendations on a routine basis. Independence of the audit staff is imperative. Every effort shall be made to isolate this staff from conflicting situations and ensure reporting and direction is dictated and controlled by the Board of Directors.

*Compliance Management Programs:*   The CFO of the Company will be the Company's designated Compliance Officer. The Compliance Officer will rely upon quality forms and procedures to ensure consumer compliance as well as expertise from the Company staff and outside parties. Regulatory compliance will be of utmost importance to the Company, and, in particular, the Compliance Officer.

Appropriate education and training will be provided for staff through industry programs, seminars, and other contracted resources.

*Independent Accountant Audits:* Mint Bank will engage an independent public accounting firm to provide an annual audit report that meets with regulatory guidelines and the Company goals and objectives. This engagement will be controlled by the Company's Board of Directors (likely, an Audit Committee function once committees of the Board are created). The engagement letter with such Company will detail the purpose of the audit as well as scope, fees, and reports to be received. This will include any limitations of scope and the requirement of an opinion on the financials. This annual audit should provide an objective and independent view of the Company's financial reporting activities, risk management processes and assurances of the effectiveness of internal controls for financial reporting, the accuracy and timeliness in recording transactions, and the accuracy and completeness of financial and regulatory reports.

## XI.     Financial Management Plan

### A. Capital and Earnings:

Capital:

The Organizer anticipates raising at least $5,000,000 in capital as described in the section entitled "*Proposed Capitalization".* The Company also intends to issue notes to provide additional finance for its operations and lines of business.

Earnings:

Mint Bank's management intends to operate the Company along the lines referred to hereinabove, and at all times focusing on profitability, revenue diversity and maintenance of product and investment quality. The Company's management anticipates revenues derived from asset management fees, merchant, and investment banking fees, interest and penalties owing on loans and securities, and other revenues resulting from appreciation gains and/or capital appreciation on investments. As well, the Company's management anticipates expenses to primarily consist of interest on loans, provision for losses on loans and/or principal investments, and general and administrative expenses, including compensation and benefits, occupancy and equipment, professional fees and other general and administrative expenses.

### B. Liquidity and Funds Management:

Mint Bank anticipates receiving and maintaining sufficient capital such that cash on hand, certificates of deposit (some of which shall be pledged to the OCFI as required by applicable law and regulation) will provide adequate liquidity for the Company's operating, investing and financing needs, as well as the Company's regulatory requirements. The Company's management expects that there would be periodic asset management fees paid by clients with respect to the initial business of the Company, together with a relatively stable and fairly rapid repayment with respect to any debt instruments initially acquired by the

Company (generally, a 2-year average life) to provide additional capital for investment and operations.

Mint Bank anticipates the primary uses of its funds to be reimbursement of expenses required to establish the Company to the Organizer, the startup of the Company's office and initial operations and the acquisition of the Company's initial investments.

## C. Investment & Credit Risk:

Effective underwriting of investment opportunities and understanding of business and collateral valuations, financial statements, cash flows, and market conditions should render appropriate investment and credit decisions. The Company will have a staff that is well-prepared and experienced for these activities. This will be supported by continued Manager and Officer Oversight (including committee oversight once same are created), education, as well as routine updates from asset management personnel, compliance consultants, and economic condition monitoring.

## XII.    Monitoring and Revising the Plan

The Board of Directors will receive and consider a significant level of management reports at their periodic board meetings and through other means of reporting and interaction. The Company's Board shall meet on an as-needed basis, but in any event not less than annually. This will include a full array of agenda items which should accurately reflect the condition and direction of the Company. The Company's condition will be regularly reviewed compared to the budget, and differences will be discussed and explained thoroughly.

A constant review of the Company's condition, opportunities, and economic factors will allow budget and strategy changes to be made in an informed and timely fashion. Once the Company has commenced operations and has operated profitably for not less than 2 years in compliance with this business plan, Management and the Board of Directors will implement a long term strategic plan to provide further guidance.

# TAX RETURNS FOR GUY GENTILE HAVE BEEN REMOVED

# Exhibit IV

# GUY GENTILE NIGRO

REDACTED

Mr. Guy Gentile has an associate degree in Criminal Justice from the University of Phoenix. Additionally, Mr. Gentile has over eighteen (18) years of experience in the Financial Industry.

Mr. Gentile has serve since 2011 as the Chief Executive Officer and Director of MintBroker International, Ltd ("MintBroker") (formerly known as Swiss America Securities, LTD). MintBroker is a company that provides full-service broker-dealer, investment advisory, and, other financial and corporate services. Nonetheless, MintBroker principal business is Wealth Management, and Executions Services.

During the year 2011, Mr. Gentile founded *SureTrader*, a division of MintBroker. Given the expertise of Mr. Gentile in the financial industry this division in less than a year operating reported daily more than 100,000 equity transactions. The success of the division prompted a major expansion to meet scaling demands and, the division set out to increase staff by two hundred percent (200%) during March 2012.  By 2012 SureTrader was ranked among Barron's top online brokers.

From 2009 to 2011 Mr. Gentile served as Managing Member of ProTrade Securities, LLC.

from 1999 to 2012, Mr. Gentile was the Chief Executive Officer and Director of Stock USA Execution Services, Inc. ("Stock USA").  Stock USA is a financial brokerage services provider.

Since 2013, Mr. Gentile serves as a Trustee for the New York State Police PBA.

From 2013 to 2016 Mr. Gentile served as a Volunteer Firefighter for Putnam Valley Fire Department.

From 2012 to 2016 Mr. Gentile served as a Chief of Staff/Advisor for Putnam County Sheriff Donald Smith.

# Exhibit V

## GOVERNMENT OF PUERTO RICO
## DEPARTMENT OF STATE

### CERTIFICATE OF FORMATION

OF

## MINT BANK INTERNATIONAL LLC
## A DOMESTIC LIMITED LIABILITY COMPANY

**Register Number:** _____

| | | |
|---|---|---|
| __X__ Doméstica<br>*Domestic* | _____ Foránea Estadounidense<br>*US Foreign* | _____ Foránea No Estadounidense<br>*Non US Foreign* |

**FIRST:** *The name of the limited liability company is:* **MINT BANK INTERNATIONAL, LLC.**

**SECOND:** Its main office of business in Puerto Rico will be located at:

*Mailing Address:* PO Box 363436,
San Juan, PR 00936-3436

*Physical Address:* 1302 Ponce de León Avenue,
José Ramón Figueroa Corner,
San Juan, PR 00907

**THIRD:** The resident agent of Company is the entity itself.

**FOURTH:** The name and the physical and mailing address of the person authorized to execute and file this Certificate of Formation with the Puerto Rico Department of State is:

*Name:* **BDO Puerto Rico, P.S.C.**
Amarily Maldonado, ESQ.

*Mailing Address:* PO Box 363436,
San Juan, PR 00936-3436

*Physical Address:* 1302 Ponce de León Avenue,
José Ramón Figueroa Corner,
San Juan, PR 00907

**FIFTH:** The faculties of the person authorized in the fourth paragraph will end upon the filling of the Certificate of Formation. The name and address of the person who will act as administrator until the first annual meeting of the members or until their successors replace them is:

*Name:* Guy Gentile Nigro
Chief Executive Officer and Director

*Mailing Address:* REDACTED

Physical Address:     REDACTED

**SIXTH:**      The purpose of the Company is to engage exclusively in the services authorized under Article 12 of Act 273 of September 25, 2012, as amended, known as the *International Financial Center Regulatory Act* (the "IFE Act"), and as provided in the International Financial Entity License granted by Office of the Commissioner of Financial Institutions ("OCFI") pursuant to the IFE Act, as follows:

1. Upon authorization of the Commissioner, accept deposits from foreign persons in checking accounts, as well as demand or fixed term deposits, including interbank demand deposits and fund deposits, or otherwise borrow money from international financial institutions and any foreign person pursuant to the Regulations of the Commissioner. Every international financial institution may borrow money on loan, provided, that said transactions are not tantamount to the acceptance of deposits, in pursuance of Section 12(a)(1) of the IFE Act.
2. Make, procure, place, guarantee, or service loans; none of such loans may be granted to a domestic person, except as provided with regard to the activities described in clauses (3), (7), (18), (19), (20) and (21) of subsection (a) of the IFE Act, and in the cases of financial guarantees for debt issuance transactions in Puerto Rico, subject to the Commissioner's approval, in pursuance of Section 12(a)(4) of the IFE Act.
3. Carry out any banking transactions allowed by the IFE Act in the currency of any country, or in gold or silver, and participate in foreign currency trade, in pursuance of Section 12(a)(8) of the IFE Act.
4. Underwrite, distribute, and otherwise trade in securities, notes, debt instruments, drafts, and bills of exchange issued by a foreign person for final purchase outside of Puerto Rico, in pursuance of Section 12(a)(9) of the IFE Act.
5. Engage in any activity of a financial nature outside of Puerto Rico, which would be allowed to be done, directly or indirectly, by a bank holding company or by a foreign office or subsidiary of a United States bank under applicable United States law, in pursuance of Section 12(a)(11) of the IFE Act.
6. Buy and sell securities outside of Puerto Rico, to the order of, or at its discretion, for foreign persons and provide investment advice in relation to such transactions or separate therefrom, to such persons, in pursuance of Section 12(a)(14) of the IFE Act.
7. Act as a clearinghouse in relation to financial contracts or instruments of foreign persons, as authorized by regulations adopted by the Commissioner, in pursuance of Section 12(a)(15) of the IFE Act.
8. Engage in such other activities as are expressly authorized by the regulations or order of the Commissioner, or are incidental to the execution of the services authorized by the IFE Act and the Regulations, in pursuance of Section 12(a)(17) of the IFE Act.
9. Upon authorization of the commissioner, provide to other international financial institutions or to foreign persons those services outside of Puerto Rico, those services of a financial nature, as these are defined and generally accepted in the banking industry of the United States and Puerto Rico and which are not listed in Section 12(a) of the IFE Act, in pursuance of Section 12(a)(23) of the IFE Act.

**SEVENTH:**    The Company shall have a minimum authorized capital of five million dollars

($5,000,000), as provided in Article 5 of the IFE Act. Any subsequent reduction in the minimum authorized capital shall be subject to the approval of the Commissioner of OCFI.

**EIGHT:**  The Company's business and affairs shall be managed by a board of directors, who shall be appointed by the member of the Company.

**NINTH:**  The existence of the Company will continue indefinitely unless terminated, as provided in the Operating Agreement.

**TENTH:**  The Certificate of Formation shall be effective on the date of its filling with the Puerto Rico Department of State.

*IN WITNESS WHEREOF, Amarily Maldonado, as Authorized Person of organizing an International Financial Entity as a Puerto Rico Limited Liability Company pursuant to the provisions of Act No. 164 of December 16, 2009, also known as he Puerto Rico General Corporations Act, as amended, and the IFE Act, who sign this Certificate; hereby swear that the facts herein stated are true, this 12th day of May of 2017.*

------------------------------

**BDO Puerto Rico, P.S.C.**
Amarily Maldonado
Authorized Person

# Exhibit VI

MINT BANK INTERNATIONAL, LLC
STATEMENT ATTACHED TO AND MADE PART OF THE
APPLICATION FOR A PERMIT TO ORGANIZE AN INTERNATIONAL FINANCIAL ENTITY

*Note: This company resolution is being submitted as required under Section 3(F) of the Application; IFE has been organized as a new PR LLC and has not, and will not operate until the IFE Permit is obtained. There is no Board of Directors at the time of filing the IFE Permit Application.*

SWORN STATEMENT OF THE MANAGING MEMBER
OF MINT BANK INTERNATIONAL, LLC

I, Guy Gentile Nigro, of legal age, single, executive and resident of San Juan, Puerto Rico do hereby declare that:

1.  My personal circumstances are the ones stated above;

2.  I subscribe this statement as Applicant and future managing member of the proposed entity Mint Bank International, LLC, a Puerto Rico limited liability company organized as an International Financial Entity under the laws of the Commonwealth of Puerto Rico;

3.  I hereby authorize BDO PUERTO RICO, P.S.C. and its representatives to file, on my behalf, the Application for a Permit to Organize an International Financial Entity with the Office of the Commissioner of Financial Institutions and any other documents, forms, or applications needed to obtain said permit; and

4.  I hereby authorize BDO PUERTO RICO, P.S.C. and its representatives to submit, on my behalf, the documentation and forms required to obtain the International Financial Entity License from the Office of the Commissioner of Financial Institutions.

In witness whereof, I swear and subscribe this sworn statement in San Juan, Puerto Rico on this 21st day of April of 2017.

By: Guy Gentile Nigro
Title: Managing Member

Affidavit No. 6585

Sworn and subscribed before me by Guy Gentile Nigro of the personal circumstances set forth before and acting as the Applicant and future member of Mint Bank International, LLC, personally known to me or whom I have identified by _____.

In San Juan, Puerto Rico, this 21th day of April, 2017.





NOTARY PUBLIC

# Exhibit VIII

# MINT BANK INTERNATIONAL, LLC ORGANIZATIONAL STRUCTURE



Mr. Guy Gentile Nigro
(the "Applicant")

100%

MINT BANK INTERNATIONAL, LLC
(the "IFE")



**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS**

# STATEMENT OF PERSONAL HISTORY
# TO BE SUBMITTED BY DIRECTORS, OFFICERS, MANAGERS AND OWNERS OF
# INTERNATIONAL FINANCIAL ENTITIES

## INSTRUCTIONS

This form must be completed, sworn and subscribed by new directors, officers, managers and owners of the International Financial Entity (IFE), and by those persons who directly or indirectly possess or intend to possess or control ten percent (10%) or more of the interest in the capital of the IFE.

Please answer every question.  If a question does not apply write N/A in the space provided.  If space available is insufficient, continue on a separate sheet, identifying the corresponding exhibit.

This personal history statement is an official document.

### MINT BANK INTERNATIONAL, LLC
Name of the International Financial Entity

Statement of Personal History
Page 2



1.   **PERSONAL INFORMATION:**

   A.   ___Guy Gentile Nigro___   REDACTED      REDACTED
        Full name of the person
        Executing this form
   REDACTED

   REDACTED

   Present Occupation or Profession:

   **Director and Chief Executive Officer of a licensed financial institution Mint Broker International, Ltd (formerly knowns as 'Swiss America Securities, Ltd').**

   B.   State the position and the estimated amount of time (monthly hours) you will devote working for the IFE (e.g. Director, Partner, Manager, Officer, Stockholder, etc.)

        **Mr. Gentile will act as the IFE's Chief Executive Officer and will devote an estimate of one hundred (100) monthly hours overseeing the business activities performed by the IFE.**

   C.   Will you own stock, participation, or have an interest in the capital of the IFE?

        Yes   ___X___        No

        If yes, state amount and percentage of ownership. 100% ownership.

Statement of Personal History
Page 3



2.  <u>EDUCATION</u>

   A. Record your formal education, including name of university, school or professional college, year of graduation and degrees obtained.

| Name of School | Location | Graduation Date | Degree |
|---|---|---|---|
| University of Phoenix | New York | 2013 | Criminal Justice |

   B. Indicate if you have any particular training related to banking business and/or securities, investment or finance.

**Mr. Gentile has held the following Financial Securities and Investments Licenses:**
**Series 7- General Securities Representative**
**Series 24- General Securities Principal**
**Series 4- Registered Options Principal**
**Series 55- Equity Trader**
**Series 63- Uniform Securities Agent State Law**
**Series 56- Proprietary Trader**
**Series 14- Compliance Official**

3.  <u>EMPLOYMENT</u>

   A. Record of occupation, commercial or financial experience for at least ten (10) years immediately preceding the date of this form, beginning with your current employment. (Attach an additional sheet if necessary in order to finish details).

| Date of Employment | Type of Employer | Address | Business (from-to) | Position& Duties | Name of Supervisor |
|---|---|---|---|---|---|
| 1999-2012 | Stock USA Execution Services, Inc. | REDACTED | 1999-Present | CEO/ Director | Beneficial Owner |
| 2011 | Mint Broker International, Ltd | | 2011-Present | CEO/ Director | Owner |

Statement of Personal History
Page 4



B. List all corporations, partnerships or any other business ventures with which you have been related as an officer, director, manager and stockholder or in a similar capacity.

| Date | Name of Organization | Type of Association | Address | Business (from-to) |
|---|---|---|---|---|
| 2013-2016 | Putnam Valley Fire Department | Volunteer Firefighter | REDACTED | 1930-Present |
| 2012-2016 | Putnam County Sheriff- Donald Smith | Chief of Staff/ Advisor | | N/A |
| 2013-Present | New York State Police PBA | Trustee | | N/A |
| 2009-2011 | ProTrade Securities, LLC | Managing Member | | 2009-2011 |

## 4. REFERENCES

Provide three (3) references of persons who have known you for (5) five years or more.  Do not include relatives, present employer or employees or bank references.

| Name | Business Organization | Address | Telephone |
|---|---|---|---|
| Gregory Yankow | Federal Bureau of Investigations | REDACTED | |
| Adam Ford | Ford O'Brian LLP (Law Firm) | | |
| Franklin Ogele | Franklin Ogele, Attorney at Law | | |

## 5. OTHER INFORMATION

A. Do you have any agreement, written or otherwise, relating to the acquisition of any additional interest in the capital of the IFE?  (If "yes" give full details on separate sheet.)

Yes _____        No X

Statement of Personal History
Page 5



B.  Have you ever been?

(1)   An officer, director or being related to a company which has become insolvent or bankrupt?  If so, please provide name and address of company and type of business.

Yes _____          No __**X**__

(2) Arrested, detained, charged, convicted of any felony or of any fraudulent acts summoned to answer for any criminal offense or violation for any reason whatsoever, regardless of the disposition of the event?

Yes _____**X**_____          No _____

**Please refer to statement attached with Exhibit 3.**

(3) Declared bankrupt, or an assignment has ever been made for the benefit of your creditors?

Yes _____          No ____**X**___

(4) Permanently or temporarily enjoined from engaging in or continuing any conduct or practice related to any business by any competent court or government entity in any country?

Yes _____          No ____**X**_____

If the answer to any part of item B is in the affirmative, attach a separate sheet providing full details.  If during the period of your association with the financial institution, an event occurs which would cause an affirmative answer to any part of this item B, notify immediately the Commissioner of Financial Institutions in writing as to the facts relating to such events.

Statement of Personal History
Page 6



C. Summit information regarding your relation to other financial institutions.

6. <u>ADDITIONAL DOCUMENTS</u>:

A. Submit herewith as part of this form the following documents:

1. two 2x2 photographs– **Please find copy enclosed as Exhibit 1.**

2. Financial statement– **Please find copy enclosed as Exhibit 2.**

3. Criminal Background check– **Please find copy enclosed as Exhibit 3.**

4. Resume– **Please find copy enclosed as Exhibit 4.**

5. Certification of tax liability with the Puerto Rico Treasury Department– **Please find copy enclosed as Exhibit 5.**

Statement of Personal History
Page 7



## SWORN CERTIFICATION

I, <u>Guy Gentile Nigro</u>, being duly sworn, depose and state that I have read the foregoing Statement of Personal History and know the contents thereof; that the statements contained therein, including the attachments, if any, are to the best of my knowledge and belief, true and correct; that I prepared said statement with the knowledge that any misrepresentation or failure to reveal information requested by the Commissioner of Financial Institutions of Puerto Rico, may be deemed sufficient cause for denial or revocation of the appointment.

Signature

AFFIDAVIT NUMBER 6588

Sworn and subscribed to before me by, Guy Gentile Nigro, of legal age,

_____Single,_____     _____Executive_____, and resident of
(Married or Single)            (Occupation)

San Juan, Puerto Rico
(City, State and/or Country)

At San Juan, Puerto Rico on this 21st day of April of 2017.

SEAL





Notary Public

# Exhibit 1

 

# Exhibit 2

# Guy Gentile

## BALANCE SHEET

### As of December 31, 2016

|  | TOTAL |
|---|---|
| ASSETS | |
|   Current Assets | |
|    Bank Accounts | |
|     Cash Held In Banks | REDACTED |
|      Banks In Puerto Rico | |
|      Banks In The Bahamas | |
|      Cash Held In Retirement Plans | |
|     Total Cash Held In Banks | |
|    Total Bank Accounts | |
|   Total Current Assets | |
|   Fixed Assets | |
|    Buildings | |
|     Real Estate - Luxury Home - Ocean Club Estates | |
|     Real Estate - Private Occupancy (Apt In Puerto Rico) | |
|     Real Estate Holdings Commercial Bldg. | |
|    Total Buildings | |
|    Vehicles | |
|     1969 Camaro Blue | |
|     1969 Camaro White | |
|     2013 Fiat 500 | |
|     2014 Mercedes Benz G-63 | |
|    Total Vehicles | |
|   Total Fixed Assets | |
|   Other Assets | |
|    Investments | |
|     MintBroker Group, Ltd | |
|     MintBroker International, Ltd | |
|     Stock USA Trust | |
|    Total Investments | |
|   Total Other Assets | |
| TOTAL ASSETS | |
| LIABILITIES AND EQUITY | |
|   Liabilities | |
|    Current Liabilities | |
|     Other Current Liabilities | |
|      Other Current Liabilities | |
|       Loans & Commitments - Auto | |
|     Total Other Current Liabilities | |
|    Total Other Current Liabilities | |
|    Total Current Liabilities | |
|    Long-Term Liabilities | |
|     Long Term Liabilities | |

| | TOTAL |
|---|---|
| | REDACTED |
| Long Term Commitments - Child Support | |
| **Total Long Term Liabilities** | |
| **Total Long-Term Liabilities** | |
| **Total Liabilities** | |
| Equity | |
| Owner's Equity | |
| Retained Earnings | |
| Net Income | |
| **Total Equity** | |
| **TOTAL LIABILITIES AND EQUITY** | |

# Exhibit 3

FDLE Criminal History Information on the Internet: CCH Search Results                          4/19/17, 4:14 PM



Payment receipt has been emailed to guygentile@me.com

1. MY INFORMATION      2. CRITERIA      3. CONFIRMATION      4. PAYMENT      5. CANDIDATES      6. RESULTS

## These are the results of your search. Read the instructions below to complete the search.

|  | First | Middle | Last | Date of Birth | Age | Race | Sex | SSN |
|---|---|---|---|---|---|---|---|---|
| *Name* | GUY |  | GENTILE | REDACTED |  |  |  |  |
| *Maiden/Alias* |  |  |  | – |  | – | – | – | – |
| *Maiden/Alias 2* |  |  |  | – |  | – | – | – | – |
| *Transaction* | 8858738 |  |  |  | 4/19/2017 4:14:33 PM |  |  |  |

FDLE found NO Florida criminal history based on the information provided. No criminal record check was conducted for other states or for the FBI. This record (or statement that there is not a record) is based on a request from a member of the public. This customer used the FDLE Internet system to search for the Florida record. FDLE is providing this to respond to the customer's request.

Click the "Continue" button below for a printable record of these results.

*Help understanding these results*

Continue

**MINT BANK INTERNATIONAL LLC**
**STATEMENT ATTACHED TO AND MADE PART OF THE**
**STATEMENT OF PERSONAL HISTORY TO BE SUBMITTED BY**
**DIRECTORS, OFFICERS, MANAGERS AND OWNERS OF AN IFE**

Facts Relating to Detention, Arrest and/or Sentence- Section 5 Question B(2)

Mr. Gentile was arrested on July 13, 2012 based on a sealed complaint. He was indicted for securities fraud violation in connection with "pump-and-dumped" schemes that allegedly began to occur during April of 2007 and ended approximately in June 2008. After the arrest, Mr. Gentile served as an informant for the United States Government. Despite his services as an informant, he was indicted again on March 23, 2016. After some legal procedures, the indictment was dismissed. Since then, Mr. Gentile has become an exemplary and law abiding citizen and successful entrepreneur.

# Exhibit 4

# GUY GENTILE NIGRO

REDACTED

Mr. Guy Gentile has an associate degree in Criminal Justice from the University of Phoenix. Additionally, Mr. Gentile has over eighteen (18) years of experience in the Financial Industry.

Mr. Gentile has serve since 2011 as the Chief Executive Officer and Director of MintBroker International, Ltd ("MintBroker") (formerly known as Swiss America Securities, LTD). MintBroker is a company that provides full-service broker-dealer, investment advisory, and, other financial and corporate services. Nonetheless, MintBroker principal business is Wealth Management, and Executions Services.

During the year 2011, Mr. Gentile founded *SureTrader*, a division of MintBroker. Given the expertise of Mr. Gentile in the financial industry this division in less than a year operating reported daily more than 100,000 equity transactions. The success of the division prompted a major expansion to meet scaling demands and, the division set out to increase staff by two hundred percent (200%) during March 2012.  By 2012 SureTrader was ranked among Barron's top online brokers.

From 2009 to 2011 Mr. Gentile served as Managing Member of ProTrade Securities, LLC.

from 1999 to 2012, Mr. Gentile was the Chief Executive Officer and Director of Stock USA Execution Services, Inc. ("Stock USA").  Stock USA is a financial brokerage services provider.

Since 2013, Mr. Gentile serves as a Trustee for the New York State Police PBA.

From 2013 to 2016 Mr. Gentile served as a Volunteer Firefighter for Putnam Valley Fire Department.

From 2012 to 2016 Mr. Gentile served as a Chief of Staff/Advisor for Putnam County Sheriff Donald Smith.

# Exhibit 5

MODELO
SC 6096
17 MAY 10

GOBIERNO DE PUERTO RICO
DEPARTAMENTO DE HACIENDA
AREA DE RENTAS INTERNAS

FECHA: 26-04-2017
HORA : 13:51
RVU9894

CERTIFICACION DE DEUDA

**REDACTED**

CERTIFICO QUE EL CONTRIBUYENTE ARRIBA DESCRITO
NO TIENE DEUDAS TASADAS POR CONCEPTO DE
CONTRIBUCION SOBRE INGRESOS, PATRONAL Y
ARBITRIOS AL DIA DE 26-04-2017 EN NUESTRO
SISTEMA PRITAS.

ESTA CERTIFICACION NO INCLUYE DEUDAS PENDIENTES  POR TASAR  O EN PROCESO DE
INVESTIGACION POR EL NEGOCIADO IMPOSITIVO A LA FECHA DE ESTA CERTIFICACION.

A D V E R T E N C I A :

FAVOR DE REVISAR ESTE DOCUMENTO EN DETALLE. SI USTED NO ESTA DE
ACUERDO CON ALGUNA DE LA INFORMACION AQUI PROVISTA DEBERA PRESENTAR
SU RECLAMACION JUNTO CON LOS DOCUMENTOS QUE EVIDENCIAN LA MISMA A
LAS DIRECCIONES QUE SE INDICAN EN LA HOJA ADJUNTA.

ESTA CERTIFICACION NO ES VALIDA SIN LA FIRMA AUTORIZADA Y EL SELLO
OFICIAL EN ORIGINAL DEL DEPARTAMENTO DE HACIENDA

_____
SECRETARIO AUXILIAR DE RENTAS INTERNAS
O SU REPRESENTANTE AUTORIZADO

26 abril 17
FECHA

SELLO OFICIAL