IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GUY GENTILE-NIGRO, et al<br><br>Plaintiffs<br><br>v.<br><br>COMMISSIONER OF FINANCIAL INSTITUTIONS OF PUERTO RICO, et al<br><br>Defendants | CIVIL NO. 18-1441 (JAG) |

MOTION TO DISMISS

**TO THE HONORABLE COURT**:

**COME NOW**, the Defendants, the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico ("OCFI"), George R. Joyner-Kelly and Iris Nereida Jiménez, in their official capacities, without submitting to this Court's jurisdiction and without waiving any right or defense arising under this case or from Title III of PROMESA and the Commonwealth's Petition under said Title, and through the undersigned attorney, respectfully allege and pray as follows:

I.      INTRODUCTION AND RELEVANT FACTS

On July 3, 2018, the Plaintiffs filed the present Complaint alleging violations to the United States Constitution pursuant to 42 U.S.C. § 1983 seeking money damages. See **Docket No. 1**. The alleged facts are the following. Co-Plaintiff Mint Bank International, LLC ("Mint Bank") applied for a license to form an international financial entity in Puerto Rico by filing the required paperwork at the OCFI. The OCFI is a Puerto Rican government entity with the mission

to regulate and oversee Puerto Rico's financial system. See **Docket No. 1**, page 7 ¶13. The OCFI denied Mint Bank's application for permit to organize an international financial entity. Mint Bank filed Petition for Reconsideration, and the OCFI also denied the request and notified Plaintiffs. After that, Mint Bank failed to request a formal administrative hearing to OCFI, pursuant to the PR Law for Uniform Administrative Procedure (in Spanish, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico). See Law No. 38, June 30, 2017, as amended. On July 5, 2018, Co-Plaintiff Mint Bank filed a Judicial Review before the Puerto Rico Court of Appeals ("PRCA"); the case KLRA201800359 is pending for adjudication.

Plaintiffs invokes the First and the Fourteenth Amendments of the United States Constitution alleging, in summary, the violation of Co-Plaintiff Gentile-Nigro's right to freedom of expression (personal speech or expressive conduct) and the violation of substantive due process because OCFI's initial decision was made prior to any opportunity for a hearing. Plaintiffs allege that the OCFI final order impermissibly considered Gentile's personal speech protected by the First Amendment when it denied Mint's application for a license to form an international financial entity.

As part of the present Complaint, the Plaintiffs also seek nominal, compensatory, and punitive damages, and attorneys' fees for the costs and expenses, including reasonable attorneys' fees award, in accordance with 42 U.S.C. § 1988 and other applicable law. (Docket No. 1 at 31). In that sense, Defendants allege that a claim for monetary damages against them, in their official capacities, is precluded by the Eleventh Amendment of the U.S. Constitution. The Eleventh Amendment renders states, including Puerto Rico, immune from claims brought in federal courts by citizens of the same or any other state. See *Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority*, 991 F.2d 935, 938 (1st Cir. 1993); *De Leon Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116,

2

121 (1st Cir. 1991). The Eleventh Amendment protects the Commonwealth, and the OCFI, being an Office/arm of the Commonwealth of Puerto Rico, is entitled to Eleventh Amendment Immunity as well. It is well-settled that "Puerto Rico, despite the lack of formal statehood, enjoys the shelter of the Eleventh Amendment in all respects." *Ramírez v. P.R. Fire Serv.*, 715 F.2d 694, 697 (1st Cir. 1983). Co-Defendant George R. Joyner Kelly (the Commissioner at the OCFI) and Co-Defendant Iris Nereida Jiménez (the Auxiliary Commissioner of the OCFI) are also entitled to Eleventh Amendment Immunity. Defendants argue that as long as monetary damages are sought with regard to the OCFI and the State officers in their official capacities, this Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

Finally, as we mentioned before, the Plaintiffs filed a judicial review in the PRCA, based on the same facts alleged in the instant complaint, and that judicial review is still not resolved. The Plaintiffs have failed to exhaust administrative remedies; the Plaintiffs are engaged in forum shopping.  The allegation of violation of due process of law is frivolous.

II.     STANDARD FOR MOTION TO DISMISS

A defendant may, in response to an initial pleading, file a motion to dismiss the complaint for lack of jurisdiction over subject matter and for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(1) and 12(b)(6), respectively. If the Court determines that subject matter jurisdiction does not exist it must dismiss the case and not make any determination on the merits of the case. See *Menendez v. United States*, 67 F.Supp.2d 42, 45 (D.P.R.1999). On the other hand, to survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that they are entitled to relief." *Clark v. Boscher,* 514 F.3d 107, 112 (1st Cir.2008). In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiffs' favor." *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir.2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." <u>Id</u>. at 305–306. Nevertheless, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle v. Berkshire Life Ins.,* 142 F.3d 507, 508 (quoting *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996)); *Buck v. American Airlines, Inc.,* 476 F.3d 29, 33 (1st Cir.2007); <u>see also</u> *Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999). Thus, Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. *Berner v. Delahanty,* 129 F.3d 20, 25 (1st Cir.1997) (citing *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988)). Moreover, "even under the liberal pleading standards of Fed R. Civ. P. 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" *Twombly,* 550 U.S. at 559. Although complaints do not require detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. <u>Id</u>. at 556.

In *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court reaffirmed *Twombly* and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. <u>See</u> *Iqbal,* 129 S.Ct. at 1949–50. First, the court must identify any conclusory

allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949. Specifically, the court is not obligated to accept legal conclusions set forth as factual allegations in the complaint. Id. Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting *Twombly,* 550 U.S. at 555); see also *Peñalbert–Rosa v. Fortuño–Burset,* 631 F.3d 592, 595 (1st Cir.2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual."). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio–Hernandez v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir.2011). Second, a complaint survives only if it states a plausible claim for relief. Id. (citing *Twombly,* 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. *Id.* A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 1949, 1952. Such inferences must amount to more than a sheer possibility and be as plausible as any obvious alternative explanation. Id. at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

## III. PLAINTIFFS' CLAIMS AGAINST THE OFFICE OF THE COMMISSIONER OF FINANCIAL INSTITUTIONS OF THE COMMONWEALTH OF PUERTO RICO, GEORGE R. JOYNER-KELLY AND IRIS NEREIDA JIMÉNEZ IN THEIR OFFICIAL CAPACITY ARE BARRED BY THE ELEVENTH AMENDMENT

The Eleventh Amendment to the United States Constitution provides:

> "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Eleventh Amendment immunity protects the state and the arms or alter egos of the state. *Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of the Commonwealth of Puerto Rico*, 818 F.2d 1034, 1036 (1st Cir. 1987); see *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 477 (1st Cir. 2009) (citations omitted) ("An administrative arm of the state is treated as the state itself for the purposes of the Eleventh Amendment, and it thus shares the same immunity."). Similarly, the Eleventh Amendment extends not only to state agencies acting as alter egos to the state but also to state employees exercising their official duties. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). (Citation omitted). Also, it is well known that "[t]he eleventh amendment bars the recovery of damages in a federal court against the Commonwealth of Puerto Rico, e.g., *Ramírez v. Puerto Rico Fire Service*, 715 F.2d 694, 697 (1st Cir. 1983), and, by the same token, it bars the recovery of damages in official capacity suits brought against Puerto Rico officials where recovery will come from the public fisc." *Culebra Enter. Corp. v. Rivera Ríos*, 813 F.2d 506, 516 (1st Cir. 1987) (citations omitted). In *Edelman v. Jordan*, 415 U.S. 651, 677 (1978), the Supreme Court held that "a federal court's remedial power, consistent with the Eleventh Amendment, [...] may not include a retroactive award which requires the payment of funds from the state treasury." The rationale behind these protections is that a claim for monetary relief against an arm of a state or a state official in his or her official capacity is an action for the recovery of money from a state. *Ford Motor v. Dept. of Treasury*, 323 U.S. 459, 65 S. Ct. 347 (1945). Finally, "Eleventh Amendment immunity can be raised at any time because of its jurisdictional implications." *Acevedo López v. Police Dep't*, 247 F.3d 26, 28 (1st Cir. 2001).

There are of course exceptions to this rule. Specifically, the Eleventh Amendment protection does not apply in four (4) circumstances: a state may consent to be sued in federal forum; a state may waive its own immunity by statute or the like; Congress may abrogate state immunity; or, if circumstances allow, other constitutional imperatives may take precedence over the Eleventh Amendment's bar. See *Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority*, 991 F.2d 935, 938 (1st Cir. 1993). In the present case, none of these exceptions are raised or may be surmised from the allegations in the complaint.

A. **The Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico is an arm or "alter ego" of the Commonwealth of Puerto Rico**

As the First Circuit stated in *Metcalf*, questions of this nature pose "an essentially functional inquiry, not easily amenable to bright-line answers or mechanical solutions." 991 F.2d at 939. The mere "'slice of state power,' without more, will not sate the Eleventh Amendment." Id. Only the state itself -or the Commonwealth- and its "arms" receive immunity. Because the Eleventh Amendment's primary concern is to minimize federal courts' involvement in disbursal of the public fisc, a crucial inquiry is whether the state has a legal obligation to satisfy judgments against an institution out of public coffers. Id. If so, then, notwithstanding who the nominal defendant is, the real, substantial party in interest would be the state, or the Commonwealth, in the case at bar. As such, the defendant "arm of the state" would be "entitled to invoke sovereign immunity from suit [. . .]." See *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 89 L. Ed. 389, 65 S. Ct. 347, 350 (1945).

> Because it is not always limpid whether, or to what extent, the state treasury must stand behind the judgment debts of a particular institution, we have identified seven related areas as prospects for further inquiry. These areas, each of which can be mined for information that might clarify the institution's structure and function, include: (1) whether the agency has the funding power to enable it to satisfy

judgments without direct state participation or guarantees; (2) whether the agency's function is governmental or proprietary; (3) whether the agency is separately incorporated; (4) whether the state exerts control over the agency, and if so, to what extent; (5) whether the agency has the power to sue, be sued, and enter contracts in its own name and right; (6) whether the agency's property is subject to state taxation; and (7) whether the state has immunized itself from responsibility for the agency's acts or omissions. The list is not an all-inclusive compendium, for other areas of inquiry may prove fruitful in particular circumstances. It is, however, clear that all the pertinent factors have a common orientation: the more tightly the agency and the state are entangled, the more probable it becomes that the agency shares the state's Eleventh Amendment immunity.

*Metcalf*, 991 F.2d at 939-40 (internal citation omitted).

1. **The Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico does not possess the funding power necessary to enable it to satisfy judgments without direct Commonwealth participation or guarantees.**

The Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico ("The Office") is legally unable to satisfy judgments. The OCFI's law establishes that the funds necessary for the administration of the Office shall be consigned in the Commonwealth's joint resolution of the general budget of expenses. See Article 18(b) of Law No. 4, October 11, 1985, as amended, P.R. Laws Ann. § tit. 7, 2018. Therefore, any judgment for liability shall not be paid by that Office, but by the Commonwealth directly.

2. **The functions of the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico are governmental in nature.**

The Office of the Commissioner of Financial Institutions' enabling law states that:

The Financial Institutions Commissioner's Office shall be charged with the main responsibility of controlling and supervising the financial institutions that operate or do business in the Commonwealth of Puerto Rico, among its other functions provided in this chapter. The Office of the Commissioner of Financial Institutions shall be deemed as an agency of public law and order for the sole purpose that it may compile and verify information that shall be obtained from and that shall be made available by the traditional agencies of public law and order of the Government of Puerto Rico on the criminal record of those persons of whom there is a need to evaluate said record for the discharge of the duties imposed by this

8

chapter, and other acts and regulations. In case that said information is in custody of state, federal or foreign agencies of public law and order, the Office of the Commissioner of Financial Institutions shall also be recognized as such by the Government of Puerto Rico before said agencies, so that the information may be requested directly from the body in question. The information obtained, through the inherent power herein granted shall be given by the Office of the Commissioner of Financial Institutions that degree of confidentiality given to said information by the investigative and public law and order agency that has furnished the same.

See P.R. Laws Ann. tit. 7, § 2003.

Thus, clearly the Office of the Commissioner of Financial Institutions fulfills key governmental functions.

3. **The Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico is not separately incorporated.**

The Office of the Commissioner of Financial Institutions' enabling statute nowhere does it state that it is separately incorporated. Thus, the OCFI is not a separately incorporated entity. In addition, it is important to underscore that the OCFI is a governmental office and it is not a public corporation pursuant the enabling statute.

4. **The Commonwealth exerts complete control over the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico.**

The Office of the Commissioner of Financial Institutions is a governmental office. The Office of the Commissioner shall be under the direction of a Commissioner, who shall be appointed by the Governor with the advice and consent of the Senate of Puerto Rico, and shall be directly responsible to the Governor; and the Commonwealth provides budget and special state funds. See P.R. Laws Ann. tit. 7, §§ 2005, 2018. Also, the Office of the Commissioner of Financial Institutions does not have a separate legal identity apart from the Commonwealth. See Law No. 4, October 11, 1985, as amended.

5. **The Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico does not have the power to sue, be sued, in its own name and right.**

As stated before, the OCFI is a governmental office. Therefore, clearly, the OCIF does not have the power to sue, or be sued separately from the Commonwealth.

6. **The Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico property is not subject to state taxation.**

Nothing in the enabling statute indicates whether the OCFI is subject to state taxation. The OCFI's organic act is bereft of such statutory language; as a governmental office, the OCFI is not subject to state taxation.

7. **The Commonwealth has not immunized itself from responsibility for the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico acts or omissions.**

As stated before, the OCFI does not have a separate legal identity apart from the Commonwealth. The government of Puerto Rico retains control over the OCFI and any award would be paid out of the Commonwealth Treasury.

All the factors stated above, point to the unavoidable conclusion that the OCFI is an arm of the State. Accordingly, the OCFI's employees, acting in their official capacities, are in reality employees of the Commonwealth. As such, they are also entitled to Eleventh Amendment immunity.

B. **Claims Against State Officials acting in their Official Capacity, for Money Damages, are essentially claims against the State itself, therefore, barred under Eleventh Amendment immunity.**

Indisputably, in the absence of a waiver, the Eleventh Amendment bars actions for money damages against an arm or "alter ego" of the Commonwealth. See *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Johnson v. Rodriguez*, 943 F.2d 104, 109 (1st Cir. 1991). The Eleventh Amendment bars the recovery of damages in federal court against the Commonwealth of

Puerto Rico. *Ramirez v. Puerto Rico Fire Service*, 715 F.2d 694, 697 (1st Cir. 1983), and, by the same token, it bars the recovery of damages in official capacity suits brought against Puerto Rico officials where recovery will come from the public fisc. *Kentucky v. Graham*, 473 U.S. 159 (1985). When a suit seeks equitable relief or money damages from a state officer for injuries suffered in the past, the interests in compensation and deterrence are insufficiently weighty to override the State's sovereign immunity. *Will*, 491 U.S. at 89-90; see also, *Papasan v. Allain*, 478 U.S. 265, 278, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986); *Green v. Mansour*, 474 U.S. 64, 68, 88 L. Ed. 2d 371, 106 S. Ct. 423 (1985); *Edelman v. Jordan*, 415 U.S. 651, 668, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974).

Defendants, in this action, were sued in their official capacity as high ranking officials of the OCFI. Insofar as Defendants are sued for actions taken in their official capacities, this is "only another way of pleading an action against [. . .] ultimately, the Commonwealth of Puerto Rico." *Culebras*, 813 F.2d at 516; see also *Kentucky*, 473 U.S. at 165; *Ford Co. v. Department of Treasury*, 323 U.S. 459, 463-64 (1944). Absent a waiver by a State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court, a bar that remains in effect when state officials are sued for damages in their official capacity. *Kentucky*, 473 U.S. at 159.

As stated above, the Eleventh Amendment protects the Commonwealth, and the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico, being an Office of the Commonwealth, is entitled to Eleventh Amendment Immunity as well. For said reasons, the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico, as an arm of the Commonwealth, and the employees, George R. Joyner-Kelly and Iris Nereida Jiménez, sued in their official capacities, are entitled to Eleventh Amendment Immunity. Here, there can be no doubt that the claims against Co-Defendants, requesting monetary damages are barred by the Eleventh Amendment. See *Will*, 491 U.S. at 71 (Recognizing that in enacting § 1983

Congress did not abrogate the states' Eleventh Amendment immunity). Accordingly, to the extent Plaintiffs' Complaint can be construed as requesting monetary damages against the Defendants, such claims ought to be **DISMISSED WITH PREJUDICE**.

### IV.   PLAINTIFFS HAVE FAILED TO STATE A DUE PROCESS CLAIM

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Accordingly, "certain substantive rights -- life, liberty, and property -- cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). "'[T]he root requirement' of the Due Process Clause" is that an individual must be provided notice and an opportunity to be heard prior to being "'deprived of any significant property interest.'" Id. at 542 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)).

In evaluating a procedural due process claim under the Fourteenth Amendment, we must determine "whether [the plaintiff] was deprived of a protected interest, and, if so, what process was his due." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). Accordingly, "[t]o establish a procedural due process violation, the plaintiff 'must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [him] of that interest without constitutionally adequate process.'" *González-Droz v. González-Colón*, 660 F.3d 1, 13 (1st Cir. 2011) (second alteration in original) (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 56 (1st Cir. 2006)); see also *Rocket Learning, Inc. v. Rivera-Sánchez*, 715 F.3d 1, 11 (1st Cir.2013) ("To establish a procedural due process violation, a plaintiff must show that (1) it was deprived of a protected property interest, and (2) the procedures attendant to that deprivation were constitutionally inadequate."). "Property interests are not created by the Constitution; 'they are created and their dimensions are defined by existing rules or understandings that stem from an

independent source such as state law.'" *Rosado De Velez v. Zayas*, 328 F.Supp.2d 202, 211 (D.P.R. 2004) (citing *Bd. of Regents of States Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Plaintiffs' federal due process right is totally dependent on possessing a property right in obtaining a license to form an international financial entity in Puerto Rico. The concept of property requires more than an abstract need or desire; the property right is to be grounded on a legitimate claim of entitlement. *Board of Regents v. Roth*, supra at 576-578. The source of the legitimate claim of entitlement is state law. The Plaintiffs have failed to establish that they had a protected property interest in obtaining a license to form an international financial entity in Puerto Rico, therefore his due process claim must fail. See *Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.*, 421 F.3d 1, 11 (1st Cir. 2005) ("Because the plaintiffs identify no constitutionally protected property interest, it is unnecessary to delve any deeper into the section 1983 inquiry.").

As mentioned above, the OCFI denied Mint Bank's application for permit to organize an international financial entity. Mint Bank filed Petition for Reconsideration, and the OCFI also denied the request and notified Plaintiffs accordingly. After that, **Mint Bank did not request to OCFI a formal administrative hearing**, see Docket No. 1 at 19 ¶ 65, pursuant to the PR Law for Uniform Administrative Procedure (in Spanish, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico). See Law No. 38, June 30, 2017, as amended. In that instance, the Plaintiffs were required to exhaust administrative remedies available to them and they did not proceed to do so.

Additionally, Plaintiffs are engaged in forum shopping because, on July 5, 2018, Co-Plaintiff Mint Bank filed a Judicial Review before the Puerto Rico Court of Appeals ("PRCA"),Case No. KLRA201800359, and said Judicial Review is currently pending adjudication. The forum-shopping occurs "when a litigant selects a forum with only a slight connection to the

factual circumstances of his action, or where forum shopping alone motivated the choice." See *Capitol Records, Inc. v. Optical Recording Corp.,* 810 F.Supp. 1350, 1353 (S.D.N.Y.1992) and *EMC Corp. v. Parallel Iron, LLC*, 914 F. Supp. 2d 125 (D. Mass. 2012).

V.  CONCLUSION

Based on the arguments above discussed, the Defendants respectfully request that the Court enter judgment dismissing with prejudice the instant case.

**WHEREFORE**, the Defendants respectfully request that this Honorable Court grant the present motion and **DISMISS WITH PREJUDICE** Plaintiffs' Complaint.

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all attorneys of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 27th day of August, 2018.

| | |
|---|---|
| **WANDA VÁZQUEZ-GARCED**<br>Secretary of Justice<br><br>**WANDYMAR BURGOS-VARGAS**<br>Deputy Secretary of Justice<br>In Charge of Litigation<br><br>**SUSANA I. PEÑAGARÍCANO-BROWN**<br>Director of the Federal Litigation Division | s/*Frances Y. Rivera-Avilés*<br>**FRANCES Y. RIVERA-AVILES**<br>USDC-PR NO. 230405<br>Department of Justice<br>Federal Litigation Division<br>P.O. Box 9020192<br>San Juan, PR 00902-0192<br>Office (787) 721.2900, Ext. 2652<br>frarivera@justicia.pr.gov |