UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Mint Bank International, LLC and Guy Gentile Nigro

Plaintiffs,

- against -

Office of the Commissioner of Financial Institutions of
Puerto Rico

- and -

George R. Joyner Kelly, in his official capacity as
Commissioner of Financial Institutions of Puerto Rico and
Iris Nereida Jiménez, in her official capacity as the
Auxiliary Commissioner of the Office of the Commissioner
of Financial Institutions of Puerto Rico

Defendants.

**Memorandum of Law in Opposition**

Case 3:18-cv-01441-JAG

FORD O'BRIEN LLP
575 Fifth Avenue, 17th Floor
New York, New York 10017
Phone: 212.858.0040

Adsuar Muñiz Goyco Seda & Pérez-Ochoa,
P.S.C.
208 Ponce de León Ave., Suite 1600
San Juan, PR 00918
Phone: (787) 281-1952

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ........................................................................ 2

STATEMENT OF FACTS ................................................................................ 5

ARGUMENT ..................................................................................................... 9

      I.    Legal Standard on Motion to Dismiss ........................................... 9

     II.   Gentile Properly Pleaded Five Causes of Action Seeking Declaratory and Injunctive Relief and the Eleventh Amendment Provides No Immunity to the State or Government Officials Acting in Their Official Capacity Who Violate an Individual's Constitutional or Statutory Rights Seeking Such Relief ....................... 9

    III.  Gentile Properly Alleged a Substantive Due Process Claim Which Does Not Require Proof of a "Property" Interest Not a Procedural Due Process Claim Which Does ........................................................................................ 12

    IV.  Defendants' Remaining Perfunctory Arguments Need Not Be Addressed, Lack Merit, and Do Not Provide a Legal Ground for Dismissal ....................................... 13

CONCLUSION ................................................................................................ 16

## TABLE OF AUTHORITIES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................................... 9

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ......................................................................................... 9

*Collazo-Rosado v. University of Puerto Rico,*
  775 F. Supp. 2d 376 (D.P.R. 2011) ............................................................... 11

*Darby v. Cisneros,*
  509 U.S. 137 (1993) ....................................................................................... 14

*Exeter-West Greenwich Regional School Dist. v. Pontarelli,*
  788 F.2d 47 (1st Cir. 1986) ........................................................................... 10

*Fred v. Roque,*
  916 F.2d 37 (1st Cir. 1990) ........................................................................... 10

*Hutto v. Finney,*
  437 U.S. 678 (1978) ....................................................................................... 10

*Laborde v. Rivera-Dueno,*
  719 F. Supp. 2d 198 (D.P.R 2010) ................................................................ 11

*Marrero Gutierez v. Molina,*
  330 F. Supp. 2d 45 (D.P.R. 2005) ................................................................ 10

*Redondo-Borges v. U.S. Dept. of Housing and Urban Development,*
  421 F.3d 1 (1st Cir. 2005) ....................................................................... 10, 13

*Schatz v. Republican State Leadership Comm.,*
  669 F.3d 50 (1st Cir. 2012) ............................................................................. 9

*Zynda v. Arwood,*
  175 F. Supp. 3d 791 (E.D. Mich. 2016) ....................................................... 10

Statutes

42 U.S.C. § 1988 ............................................................................................... 11

Rules and Regulations

Rule 12(b)(6) ............................................................................................. *Passim*

Plaintiffs Mint Bank International, LLC (Mint Bank) and Guy Gentile Nigro (Gentile) (collectively Plaintiffs or Gentile) respectfully submit this memorandum of law in opposition to Defendants', Office of the Commissioner of Financial Institutions of Puerto Rico (OCFI or the Commission), George R. Joyner Kelly, and Iris Nereida Jiménez (collectively Defendants), Motion to Dismiss the Complaint.

## PRELIMINARY STATEMENT

Defendants filed a motion to dismiss Gentile's entire complaint, which properly pleaded five causes of action seeking declaratory and injunctive relief based on his inclusion of boilerplate language requesting monetary damages in one of his seven prayers for relief. But the request for a particular remedy in a complaint to which a plaintiff may not be entitled does not render the entire complaint infirm or compel its dismissal with prejudice as to all claims.  It merely provides a reason for a court to deny the remedy that the plaintiff cannot obtain at the conclusion of the matter. Defendants' memorandum arguing that the Eleventh Amendment compels the dismissal of this complaint – including the claims for injunctive relief – finds no support in the law.

 Defendants denied Mint Bank's application for a license to form an international financial entity in Puerto Rico, based on (1) public political statements made by Gentile, Mint Bank's Director and Chief Executive Officer, that were critical of the federal government and disapproved of by the Commission, and (2) an indictment against Gentile based on alleged misconduct from over a decade ago that was *dismissed on a motion to dismiss*, and from which the government declined to appeal. The Constitution does not tolerate such conduct by government agencies or government officials.  The government cannot deny a license based on protected political speech nor unproven (and factually unsupported) allegations of misconduct by

the government. The First Amendment protects against this sort of curtailment of free speech and expression. And the Due Process clause of the Fourteenth Amendment safeguards against the dilution of the "presumption of innocence" and forbids government agencies and officials from applying a "presumption of guilt," as Defendants did here to justify denying Mint Bank's application.

Based on these fundamental constitutional rights, Gentile brought this suit seeking *declaratory and injunctive relief.* As the Complaint makes clear, Gentile seeks, among other things, a ruling that (1) the Commission's actions violated Gentile's First Amendment rights to freedom of speech and his substantive due process rights; (2) the statutes at issue are unconstitutional on their face and as applied to Mint Bank's license application because they violate the Fourteenth Amendment; and (3) compels the OCFI to issue an international financial entity license to Mint Bank with no undue delay, or, in the alternative, enjoins OCFI from continuing to deny the application without legal justification. Cmplt. ¶¶ 72-115. In demanding this relief, Gentile has set forth detailed allegations as to the manner in which Defendants violated his constitutional rights as well as five separate counts alleging violations of the First and Fourteenth Amendments. At no point in the Complaint does Gentile allege in any numbered paragraph he is entitled to monetary damages from the state or any state official acting in their official capacity. Significantly, Defendants do not argue that Gentile failed to properly plead the necessary factual and legal allegations to support each of the Complaint's five counts. Defendants implicitly acknowledge that the Complaint is properly pled in all such respects. Instead, Defendants make the argument that because "Plaintiffs' Complaint can be construed as requesting monetary damages against the Defendants, such claims ought to be **DISMISSED WITH PREJUDICE**." Defs. Memo at pg. 11 (emphasis original). Incredibly, almost the

entirety of the motion to dismiss is premised on the argument that because the Complaint contains a single line with a boiler-plate request for "nominal, compensatory, and punitive damages for the harm they suffered as a result of OCFI's violations of their constitutional rights," the Defendants are entirely immune from suit under the Eleventh Amendment, even as to the claims for injunctive relief.

Defendants fail to cite even a single case supporting the proposition that inclusion of this boiler-plate prayer for monetary relief supports "dismissal with prejudice" of the entire Complaint, because it does not. Thus, nearly the entirety of the Defendants' motion is irrelevant surplusage. Defendants devote nine full pages to arguing that OCFI is "governmental in nature," based on the fact that OCFI is a "governmental office," a phrase repeated not less than five times. Plaintiffs do not dispute either of these points. Indeed, that OCFI is a "government office" and the individual defendants were acting in their official capacity is the very foundation on which Gentile bases his arguments that Defendants are forbidden from trammeling his rights under the First and Fourteenth Amendments, and section 1983, and on which he is entitled to the declaratory and injunctive relief he seeks here.

Defendants also argue that Gentile's claims should be dismissed because he failed to set forth a due process claim because he "failed to establish" that he "had a protected property interest in obtaining a license to form an international financial entity." This argument entirely misses the mark. Gentile concurs that he has not alleged a property interest. But this does not support dismissal, because Gentile has alleged a substantive due process violation of his liberty rights resulting from the government's conduct, which shocks the conscience. Defendants erroneously argue the wrong due process claim. Gentile is <u>not</u> making a procedural due process

4

claim, and as such the existence of a property interest is irrelevant. Put simply, the absence of a property interest is not a bar to the remedies sought here.

Finally, Defendants also set forth two additional but perfunctory arguments in the final page of their brief: (1) that he failed to exhaust administrative remedies, and (2) that he is engaged in "forum shopping." But these remaining arguments are not even supported by legal citation or serious treatment, and therefore the court is free to ignore them.  In any event, assuming that there is some exhaustion requirement, Gentile has satisfied it by taking an appeal of his denial to OCFI and receiving a final denial from the agency with no further agency appeals permitted.  In addition, "forum shopping" is not even a legal claim that would permit dismissal here. Defendants' motion should be denied in its entirety.

## STATEMENT OF FACTS

This case concerns the improper denial of a bank license by OCFI. OCFI advertises its mission as to, among other things, "[r]egulate, supervise and oversee Puerto Rico's financial system," and, among its functions, investigating applicants wishing to set up an international financial entity under its jurisdiction. Cmplt. ¶¶ 42-44.  After its investigation, it can accept or deny the application, or request more information. Cmplt. ¶ 44.  While the Commissioner maintains some, but not unlimited discretion in deciding who is entitled to obtain a banking license to operate an international banking entity in Puerto Rico, the Commissioner's discretion is curbed by constitutional constraints. Cmplt. ¶¶ 45-47.  The Complaint sets forth the procedure for evaluating an application for a license, including the relevant factors considered and applicable statutes. Cmplt. ¶¶ 42–51.

On May 3, 2017, BDO filed an application on behalf of Mint Bank to organize an international financial entity. Cmplt. ¶ 51.  BDO specializes in filing IFE Applications and

provides advice to clients as to exactly which documents the client must file to apply successfully for an international financial entity license. Cmplt. ¶ 52. During a long and difficult process requiring a tremendous effort and attention to detail, Gentile worked with his hired professionals to answer fully every question and provide all requested information and documents, including detailed business and growth plans. Cmplt. ¶ 52.  This included disclosure about a decades old arrest, and subsequent indictment on decade's old alleged conduct, which a federal court dismissed on a motion to dismiss as time-barred. Cmplt. ¶ 53.  While BDO also knew about a then-pending-but-since-dismissed well-publicized SEC civil lawsuit against Gentile, BDO opted not to include information, concluding that the application did not request information about any civil lawsuit. Cmplt. ¶ 54.  Based on Gentile's interest in ensuring that OCFI received all possible information of interest, on May 25, 2017, BDO made a supplemental filing on behalf of Mint Bank and provided additional information about Gentile, including additional information about criminal charges that were brought against him by the Department of Justice but dismissed as well as additional evidence related to Gentile's character related to his integrity as a volunteer firefighter, a police officer, a bail enforcement agent, and as a recipient of a Tax Grant in Puerto Rico under Act 22 of 2012. Cmplt. ¶ 56.

On December 12, 2017, a meeting took place between Mint Bank and the Auxiliary Commissioner of OCFI, Hon. Iris Nereida Jiménez and Gentile's counsel from the law firm of Adsuar Muñiz Goyco Seda & Pérez-Ochoa, PSC. Cmplt. ¶ 58.  At this meeting, OCFI invited Mint Bank to withdraw its application to organize an international financial entity, citing two reasons. Cmplt. ¶ 59.  First, Hon. Jiménez stated OCFI's belief that Mint Bank did not have sufficient "commercial integrity," basing this conclusion *solely* on the finding that Gentile had been accused of a crime by the government. Cmplt. ¶ 59.  Curiously, Hon. Jiménez stated that

6

because the district court dismissed the criminal indictment on a motion to dismiss, Gentile could never prove his innocence, essentially applying a presumption of guilt and ignoring the fundamental reality that individuals accused of criminal conduct are *innocent until proven guilty*. Cmplt. ¶ 59.  As the second ground for denial, OCFI asserted at this meeting that it would deny Gentile's application because he failed to disclose the pendency of a civil lawsuit by the SEC against him, despite the fact that OCFI never requested this information, BDO confirmed the conclusion that such information had not been requested, Gentile's willingness to disclose the information, and the well-publicized nature of the SEC lawsuit based on the same allegations in the criminal case that had been dismissed, and fully disclosed. Cmplt. ¶¶ 53, 60.  Notably, the following day, December 13, 2017, the SECs' complaint against Gentile was dismissed with prejudice on statute of limitations grounds, thus ending any formal allegations of any misconduct against Gentile. Cmplt. ¶ 62.

Nonetheless, two months later, on February 16, 2018, Hon. Jiménez denied Mint Bank's application for a permit to organize an International Financial Entity under the IFE Act.  Cmplt. ¶ 63.  As justification for its decision, OCFI concluded that Gentile "does not have the required commercial integrity to operate an international banking entity under Act 273" and that "Mint Bank did not mention on its application a civil lawsuit filed by the SEC against Gentile," but failed to mention that the lawsuit had been dismissed with prejudice two months earlier.  Cmplt. ¶ 64.  Notably, Gentile was *not* entitled to a hearing at this initial stage of the OCFI application process for a permit to establish an International Financial Entity.

On March 8, 2018, Gentile filed an administrative appeal at OCFI of OCFI's denial of his application on the grounds that it did not consider the totality of the evidence, made its decision on impermissible inferences, and acted arbitrarily and capriciously in violation of the basic

constitutional norms of due process and equal protection. Cmplt. ¶ 65.  Gentile did *not* request a hearing after his application was denied, because the "hearing" would have been held before the same individuals who had already denied his license, and thus it would have been futile given the pretextual and unconstitutional reasons given for denying the license.  Gentile, nonetheless, did file an appeal seeking a final decision and thus exhausted his administrative remedies. Cmplt. ¶ 65.

OCFI's final decision in reconsideration of Mint Bank's application for a permit issued on June 5, 2018 further revealed the unconstitutionality of OCFI's denial of Mint Bank's application. The basis of the denial of Mint Bank's application was that Gentile had engaged in speech critical of the government, specifically that: (1) he was quoted in a press statement using the word "fuck," (2) that he posted to the social media cite Instagram a "meme" from the movie *Wolf of Wall Street* that said "fuck you all," (3) on another occasion, he noted his desire for a license plate on an expensive car that said "fuck the DOJ," and (4) he made a statement to the press and an SEC staff attorney that he would expose corruption within the SEC organization if the SEC staff attorney continued to make false statements to the federal judge overseeing his case, as the SEC eventually acknowledged it had done. Cmplt. ¶¶ 66-68.  As OCFI stated in the decision, it denied Mint Bank's application because Gentile "has expressed himself disrespectfully and used lewd language." Cmplt. ¶ 69.  This suit followed, seeking declaratory and injunctive relief related to Defendants' violations of Gentile's speech and due process rights in denial of the application.

**ARGUMENT**

I.      **Legal Standard on Motion to Dismiss**

While Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move

to dismiss a complaint for "failure to state a claim upon which relief can be granted," Rule 8

requires only that a claim for relief include "a short and plain statement of the claim showing that

the pleader is entitled to relief."  Thus, a plaintiff's complaint will survive a Rule 12(b)(6)

motion to dismiss if the complaint provides "grounds" for the plaintiff's "entitle[ment] to relief."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  The claims must be only facially

plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The First Circuit has noted that "gauging

a pleaded situation's plausibility is a 'context-specific' job that compels us 'to draw on' our

'judicial experience and common sense.'"  *Schatz v. Republican State Leadership Comm.*, 669

F.3d 50, 55 (1st Cir. 2012) (citation omitted).

II.     **Gentile Properly Pleaded Five Causes of Action Seeking Declaratory and
        Injunctive Relief and the Eleventh Amendment Provides No Immunity to the
        State or Government Officials Acting in Their Official Capacity Who Violate an
        Individual's Constitutional or Statutory Rights Seeking Such Relief**

Defendants do not suggest that Gentile has failed to allege violations to his constitutional

rights under the First and Fourteenth Amendments.  Indeed, Defendants effectively admit that

Plaintiffs are entitled to declaratory and injunctive relief and have correctly pleaded their

constitutional claims under the First Amendment and Fourteenth Amendment for which

injunctive relief is the appropriate remedy. Defendants hang their hat on the suggestion that

because the Eleventh Amendment bars *monetary* damages against the government and its

officials acting in their official capacity, the entire Complaint should be dismissed, including any

claim for the properly pled injunctive relief. In essence, Defendants ask the Court to dismiss a

complaint fundamentally seeking declaratory and injunctive relief based on their unconstitutional

conduct, because the Complaint includes a brief, boilerplate reference to monetary damages in its prayer for relief, which otherwise sets forth the six distinct forms of declaratory and injunctive relief sought for the First and Fourteenth Amendment violations chronicled in abundant detail, and alleged in Counts I–V. Tellingly, Defendants do not cite any case law supporting this suggestion, because this argument finds no support in the law and has been entirely foreclosed by First Circuit precedent.

It is well-established that "Eleventh Amendment immunity does not bar prospective injunctive relief against official-capacity defendants." *Redondo-Borges v. U.S. Dept. of Housing and Urban Development*, 421 F.3d 1, 7 (1st Cir. 2005) (citing *Rosie D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002)); *Fred v. Roque*, 916 F.2d 37, 39 (1st Cir. 1990); *see also Marrero Gutierez v. Molina*, 330 F. Supp. 2d 45, 47–48 (D.P.R. 2005) (government agency "enjoys sovereign immunity as to the monetary damages claims, but remains vulnerable to suit for injunctive relief claims"). Thus, an individual suffering constitutional wrongs may properly plead a Section 1983 claim for injunctive and declaratory relief. *See Marrero Gutierez*, 330 F. Supp. 2d at 48 (rejecting government's Eleventh Amendment argument seeking to dismiss § 1983 claim and "declin[ing] to dismiss the plaintiffs' claims for injunctive relief").

Nor does the Eleventh Amendment insulate the Defendants against an award of costs and attorney's fees. *Hutto v. Finney*, 437 U.S. 678, 692 (1978) ("Hence the substantive protections of the Eleventh Amendment do not prevent an award of attorney's fees against the Department's officers in their official capacities."); *Exeter-West Greenwich Regional School Dist. v. Pontarelli*, 788 F.2d 47, 54 (1st Cir. 1986) ("we hold that an award of fees is not barred by the eleventh amendment"); *Zynda v. Arwood*, 175 F. Supp. 3d 791, 801 n.1 (E.D. Mich. 2016) ("Defendants also argue – in passing, it appears, but in any event fruitlessly – that Plaintiffs'

request for attorney's fees is barred by the Eleventh Amendment. It is not. A court may indeed order a state to pay attorney's fees to a successful civil rights plaintiff pursuant to 42 U.S.C. § 1988."). Thus, Counts I – V and the relief in A – E and G have been properly pled. Admittedly, the relief sought in Prayer for Relief F may be precluded by the 11th Amendment, but even if so, this fact does not compel – or even permit – dismissing the rest of the Complaint with prejudice.

No basis exists for dismissal of the Complaint with prejudice. Even where a Complaint seeks monetary damages barred by the Eleventh Amendment, courts routinely permit the action to proceed on remaining claims for injunctive and declaratory relief. *See, e.g.*, *Collazo-Rosado v. University of Puerto Rico*, 775 F. Supp. 2d 376, 388 (D.P.R. 2011) ("Eleventh Amendment immunity does not bar suits for prospective declaratory, equitable or injunctive relief," permitting plaintiff to proceed on complaint even where claims for damages dismissed); *Laborde v. Rivera-Dueno*, 719 F. Supp. 2d 198, 206 (D.P.R 2010) (holding "[i]n light of controlling case law regarding Eleventh Amendment immunity" plaintiff may proceed on claim for injunctive relief even where claims for damages were barred); *Marrero Gutierez*, 330 F. Supp. 2d at 48 (holding that plaintiff may proceed on claims for injunctive relief even though Eleventh Amendment barred "monetary relief" against government agency and government agents acting in their official capacity). To the extent the Court finds that Gentile may not recover monetary damages against individuals acting in their official capacity, this has no bearing on any of Gentile's five counts nor the relief sought, which have been properly pled as confirmed by Defendants' silence.

### III.  Gentile Properly Alleged a Substantive Due Process Claim Which Does Not Require Proof of a "Property" Interest Not a Procedural Due Process Claim Which Does

Defendants misclassify Gentile's due process claims as "procedural" to advance their erroneous argument that his claims require that he "establish" a "protected property interest," yet he has no "property interest in obtaining a license to form an international financial entity in Puerto." Defs. Memo at pgs. 12–13.  The Complaint, however, makes clear that Gentile seeks relief for violations of his substantive – ***not procedural*** – due process rights. *See* Cmplt. at ¶¶ 6, 7 and Counts IV and V, and Prayer for Relief.  This is critical since substantive due process claims require proof of different elements than procedural due process claims.  Gentile's failure to properly plead a procedural due process claim has no bearing on his substantive due process claims.  Defendants have entirely missed the target here.

As the First Circuit has held:

> We have characterized substantive due process as imposing limits on what a state may do regardless of what procedural protection is provided. To support a substantive due process claim, [the plaintiff] must establish either that the defendant's actions were sufficient to "shock the conscience," or were a violation of an identified liberty or property interest protected by the due process clause

*Harrington v. Almy*, 977 F.2d 37, 43 (1st Cir. 1992) (citations, brackets, and internal quotations omitted).

Here, Gentile alleges substantive *not procedural* due process claims. In doing so, the Complaint sets forth liberty interests in the presumption of innocence as well as how the government's reliance on speech critical of a branch of the government and application of a presumption of guilt (and the statutes relied on) shocks the conscience. The denial of the license was plainly based on these prohibited considerations, since no other non-pretextual basis exists for denial of the license. *See Taylor v. Kentucky*, 436 U.S. 478, 483 (1978) (reaffirming *Coffin v.*

12

*United States*, 156 U.S. 432, 453 (1895), which "traced the venerable history of the presumption [of innocence] from Deuteronomy through Roman law, English common law, and the common law of the United States"); *see also In re Smith*, 656 F.2d 1101, 1107 (5th Cir. 1981) ( "liberty" interest in "presumption of innocence" violated  by AUSA "in drafting and reading aloud in open court the factual resumes which implicated the Petitioner in criminal conduct without affording him a forum for vindication."). Because Gentile does not allege deprivation of a "property" interest, Defendants cursory arguments are entirely beside the point. Gentile has properly pled that Defendants violated his substantive due process rights by violating his liberty interests in the presumption of innocence and restricting his ability to freely criticize the government – conduct which is contrary to unshakable American values – and that this conduct shocks the conscience and contradicts the concept of ordered liberty. Defendants failed to argue that the allegations in the Complaint do not properly set out the claims he actually alleged.

### IV.  Defendants' Remaining Perfunctory Arguments Need Not Be Addressed, Lack Merit, and Do Not Provide a Legal Ground for Dismissal

Courts routinely decline to even consider arguments that are not seriously raised in an opening memorandum of law. As the First Circuit has held:

> Few principles are more sacrosanct in this circuit than the principle that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  As a corollary to this principle, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.

*Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.*, 421 F.3d 1, 6 (1st Cir. 2005) (citations and internal quotation marks omitted). At the same time that Defendants devote nearly their entire brief to arguing that the Eleventh Amendment bars recovery of monetary damages, they reserve only two pages to their remaining three arguments (including their erroneous due process argument), suggesting even Defendants do not seriously view these last three arguments as

providing grounds for dismissal of the Complaint. These arguments should therefore all be deemed waived. To the extent the Court wishes to consider these perfunctory, unclear arguments, Gentile addresses them.

Defendants devote only one short paragraph and fail to cite to even a *single* case in support of their legally vacuous suggestion that Gentile failed to "exhaust administrative remedies," revealing that even they do not view this as an actual ground for dismissal. (Defs. Memo. at pg. 13.)  Indeed, the Complaint clearly alleges that Gentile "filed an administrative appeal at OCFI of OCFI's denial of his application" on March 8, 2018 and that "OCFI issued a final decision in reconsideration of Mint Bank's application" on June 5, 2018. Cmplt. at ¶¶ 65– 66. Thus, even assuming Gentile is subject to some exhaustion requirement – the motion to dismiss fails to explain or cite to any statute or case supporting this suggestion – Gentile "exhausted" his administrative remedies by filing an appeal on which OCFI issued a final decision. *Darby v. Cisneros*, 509 U.S. 137, 154 (1993) ("Courts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become 'final'…."). Defendants do not dispute that the agency decision denying the application was a final decision, and therefore his administrative remedies are exhausted.[1]

Defendants "forum shopping" argument suffers from similar inadequacies, and Gentile cannot decipher why Defendants believe "forum shopping" provides a basis for dismissal under Rule 12(b)(6) for failure to state a claim. While Gentile rejects the notion that he is "forum shopping" or otherwise doing anything improper by challenging Defendants' violations of his

---

[1] Defendants reference a state court complaint challenging the denial of his license. But that case, filed after this one, sets forth different allegations in support of entirely different claims. Accordingly, the law is clear that that matter does not preclude Gentile from bringing his properly pled claims here that were first filed in this federal district court.

constitutional rights in the federal district court in the district where the violations occurred, neither of the two cases cited by Defendants (one from the Southern District of New York and the other from the District of Massachusetts), even consider the question of whether "forum shopping" is a grounds for dismissal under Rule 12(b)(6). Moreover, both cases denied the defendants' motions to dismiss in evaluating the *forum non conveniens* arguments before them in any event. *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1355 (S.D.N.Y. 1992); *EMC Corp. v. Parallel Iron, LLC*, 914 F. Supp. 2d 125, 130 (D. Mass. 2012).

Of course, Defendants cannot put forth a non-frivolous *forum non conveniens* argument here – Gentile has sued Defendants (Puerto Rico) in Puerto Rico, where the events occurred. Gentile respectfully requests the Court decline to consider these undeveloped arguments.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to deny Defendants' motion to dismiss and grant any other relief it deems just and proper.

I HEREBY CERTIFY, that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all attorneys of record.

Dated: September 10, 2018

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Adam C. Ford*

_____

Adam C. Ford (*admitted pro hac vice*)
Ford O'Brien LLP
575 Fifth Avenue, 17th Floor
New York, NY 10017
aford@fordobrien.com
Phone: (212) 858-0040

</div>

15

*/s/ Katarina Stipec-Rubio*
_____
Katarina Stipec Rubio, Esq.
USDCPR No. 206611
kstipec@amgprlaw.com
Adsuar Muñiz Goyco Seda & Pérez-Ochoa, P.S.C.
208 Ponce de León Ave., Suite 1600
San Juan, PR 00918
Phone: (787) 281-1952 Fax (787) 756-9010


*Counsel for Plaintiffs*

16