UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Mint Bank International, LLC and Guy Gentile Nigro<br><br>*Plaintiffs,*<br><br>- against -<br><br>Office of the Commissioner of Financial Institutions of Puerto Rico,<br><br>*Defendant.* | Case No.: 3:18-cv-01441-WGY |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANT OFFICE OF THE COMMISSIONER OF FINANCIAL INSTITUTIONS OF PUERTO RICO INCORPORATING <u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

TO THE HONORABLE COURT,

NOW COME Plaintiffs Mint Bank International, LLC and Guy Gentile Nigro, through the undersigned attorneys, and respectfully state and pray:

Plaintiffs do not lightly bring this motion to compel pursuant to Rule 37(a)(3)(B)(iv) of the Federal Rules of Civil Procedure, firmly believing that discovery disputes can and should be resolved by the parties. However, despite months of good faith attempts to receive key documents that indisputably exist, and after months of stonewalling, making excuses, and promising to produce documents only to fail to do so, Plaintiffs are left to seek this Court's intervention. Plaintiffs are entitled to a swift resolution of their claims, and have diligently been pursuing discovery, but because the most important documents in the case have not yet been

1

produced, Plaintiffs do not have the requisite material to begin depositions. As a result, Plaintiffs seek an order granting their motion to compel, and respectfully request an extension of the discovery deadline.

Specifically, Plaintiffs move to compel Defendant Office of the Commissioner of Financial Institutions of Puerto Rico ("OCFI") to: (1) produce all non-privileged documents responsive to Request Nos. 15 and 16 of Plaintiffs' Supplemental Requests relating to similarly situated applications to OCFI, which Defendant is presently withholding and asserting relevance and confidentiality objections; and, (2) produce all non-privileged documents responsive to Supplemental Request No. 10 concerning the number of applications to OCFI in the past five years, which are late. Further, in light of Plaintiff's foot-dragging concerning the production of documents as well as a late-served (transmitted to Plaintiffs after 8:00 p.m. local time last night as this motion was being finalized) privilege log, Plaintiffs also respectfully request an order from the Court extending the discovery deadline in this matter from December 13, 2019 to February 29, 2020.

## BACKGROUND

On July 3, 2018 Plaintiffs filed a Complaint against OCFI, its Commissioner George R. Joyner Kelly, and its Auxiliary Commissioner Iris Nereida Jimenez alleging that they had violated Plaintiff Guy Gentile's First and Fourteenth Amendment rights in connection with Plaintiffs' application to OCFI to organize an international financial entity in Puerto Rico (the "Application").

Specifically, Plaintiffs alleged that although OCFI purported to deny Plaintiffs' Application on the basis of Mr. Gentile's lack of "commercial integrity," OCFI's denial was in fact based impermissibly on Mr. Gentile's public, "offensive", and anti-Government speech.

Plaintiff asserted that OCFI's denial was pretextual because its decision was allegedly based on: (1) Plaintiffs' failure to mention a civil lawsuit against Mr. Gentile, despite the fact that the application form does not specifically request information relating to civil lawsuits, and that the civil suit is a matter of public record (including Mr. Gentile's many public statements on the matter); and, (2) an arrest and indictment for securities fraud from a decade ago which was subsequently dismissed on statute of limitations grounds.

Defendants moved to dismiss the Complaint on August 27, 2018 (the "Motion"), and on March 31, 2019, Judge Jay A. Garcia-Gregory issued an order granting in part and denying in part the Motion, dismissing the individual defendants from the case and dismissing Plaintiffs' Fourteenth Amendment claims.  The case was transferred to Judge William G. Young of the District of Massachusetts as a visiting Judge for the District of Puerto Rico, and after some limited motion practice, a scheduling conference was set, the parties filed a case management plan at the end of July 2019, and Judge Young ordered that all discovery was due by December 13, 2019 with dispositive motions due by February 21, 2020.  Discovery ensued.

On July 16, 2019, Plaintiffs served its First Set of Document Requests on remaining Defendant OCFI ("First Requests").  *See* Exhibit No. 1.  As relevant here, the First Requests sought sufficient information to identify the number of applications to establish a financial entity in Puerto Rico over the past five years (First Request No. 12), and documents concerning any application to OCFI in the past five years where the applicant was denied on the basis of a lack of commercial integrity (First Request No. 10).  On September 11, 2019, Defendant served its responses and objections to Plaintiffs' First Request for Documents.  As to First Requests Nos. 10 and 12, Defendant set out generalized objections on the basis of breadth and relevance,

3

agreeing to produce all "non-privileged, non-private, non-confidential documents." *See* Exhibit No. 2.

Also relevant to the present dispute, Plaintiffs served interrogatories on Defendant on August 19, 2019. *See* Exhibit No. 3. Plaintiffs' Interrogatory No. 9 requested that Defendant identify the number of applications for a license to establish an international financial entity in Puerto Rico that OCFI denied on the grounds that the applicant lacked "commercial integrity" and to state the reasons for doing so. Plaintiffs' Interrogatory No. 10 requested that Defendant identify the number of applications for a license to establish an international financial entity in Puerto Rico that OCFI denied, in whole or part, on grounds that the applicant's principal had been previously arrested, and the applications that were granted despite the applicant's principal having been previously arrested but not convicted.

Defendant served its Answers and Objections to Plaintiffs' Interrogatories on September 18, 2019. *See* Exhibit No. 4. As to Plaintiffs' Interrogatory No. 9, Defendant responded that "[t]o the best of our knowledge, on grounds of "commercial integrity" over the last five years, one application was denied by OCFI, while another application was withdrawn by the applicant. The details of each will be kept confidential to protect the privacy of the applicant." As to Plaintiffs' Interrogatory No. 10, Defendant responded that "no applications over the last five years were denied on the grounds that the applicant's principal had been previously arrested. Not even [Plaintiffs'] application. Additionally, one license was granted despite the applicant's principal being arrested but not convicted."

Defendant eventually produced documents in response to certain of Plaintiffs' First Requests on September 11, 2019, some 57 days after the First Requests were served (the "First Production"). Defendant's First Production consisted of approximately 700 pages of .pdf

4

documents, which were not Bates numbered. The production contained no native files, and no privilege log was produced to accompany the documents, setting out how many documents Defendant was withholding on the basis of privilege, and why.

On October 3, 2019, Plaintiffs served a second, Supplemental Set of Document Requests on Defendant (the "Supplemental Requests"). *See* Exhibit No. 5. The Supplemental Requests were designed in part to reiterate certain of the First Requests that Defendant had not yet responded to (or had not responded to properly). Plaintiffs sought a Bates numbered version of the First Production as well as native versions of the documents produced, a privilege log of documents withheld from the First Production, and emails from an OCFI employee named Yanira Rodriguez Camacho *who was not identified* by Defendant as a person with knowledge in their responses to Interrogatories but whose emails - demonstrating that she was in fact involved in OCFI's deliberations - were contained in the First Production. Plaintiffs also requested email communications that were identified in detail in Defendant's responses to Interrogatories but were not actually included in its First Production. Importantly, Plaintiffs *for the second time* sought documents concerning the applications identified in Defendant's response to Interrogatory No. 9 that were either (1) denied on the grounds of "commercial integrity" or (2) withdrawn after being informed they were found to lack commercial integrity. (Supplemental Request No 15). Plaintiffs also requested documents identified in Defendant's response to Interrogatory No. 10 concerning an application that was granted "despite the applicant's principal being arrested but not convicted." (Supplemental Request No. 16).[1]

---

[1] Plaintiffs also requested documents concerning any permit application filed in the past five years "in which the Commissioner, Auxiliary Commissioner, or any other OCFI staff member discusses or analyses the 'commercial integrity' of an applicant." (Supplemental Request No. 8). In the parties' meet and confer on November 6, 2019, as discussed more fully *infra*, Defendant took the position that it would not produce any such documents, citing the confidentiality of the

5

On October 21, 2019, Defendant produced 24 emails in native format (17 of which were not included in Defendant's First Production). On October 29, 2019, Defendant produced a Bates numbered version of the First Production. Defendant produced Responses and Objections to Plaintiffs' Supplemental Requests on November 2, 2019. *See* Exhibit No. 6. There, Defendant set out broad confidentiality objections to all of Plaintiffs' requests, and then stated that "subject to and without waiving the foregoing objections, Defendant will produce relevant, non-privileged, non-private, non-confidential documents that are responsive to this request to the extent they exist and to the extent permitted by law, on a rolling basis as they become available."

Counsel for Plaintiffs followed up by email with respect to the missing documents responsive to the First Requests, documents responsive to the Supplemental Requests, and the as-yet to be produced privilege log on October 23, 2019 (Exhibit 7), and October 29, 2019 (Exhibit 8). Finally, on November 4, 2019, Plaintiffs were forced to convene a pre-motion meet and confer which the parties scheduled for Tuesday November 6, 2019 (Exhibit 9).

During the meet and confer, counsel for Defendant stated that the privilege log would be produced on or before Friday November 8, 2019,[2] and that Defendant was still collecting information that would set forth the number of applications submitted to OCFI for a permit to

---

applicants. As of the date of this filing, Plaintiffs do not move to compel the production of these documents (redacted, as necessary, to preserve the applicants' confidentiality), but hereby preserve their right to.

[2] Late last night, at 8:07 p.m. Puerto Rico time, after Plaintiffs' motion and exhibits were finalized and in the possession of local counsel for filing and after Counsel for Plaintiffs had again followed up on the whereabouts of the privilege log, *see* Exhibit 10, Counsel for Defendant finally produced a privilege log to Plaintiffs. Upon preliminary review, the log appears to have a number of deficiencies. It also appears that Plaintiffs are shrouding the entirety of their deliberative materials - the very heart of Plaintiff's case - in one form of privilege or another. Plaintiffs have already reached out to Defendant to schedule a meet and confer on the sufficiency of the privilege log, and reserve their right to file a second motion to compel as to the sufficiency of the log, or appropriateness of the privilege(s) claimed therein.

organize an international financial entity in the past five years (Supplemental Request No. 10).[3] Also, for the first time (and just short of a month before the discovery deadline), Defendant took the position that it would not be producing *any documents* concerning: (1) the OCFI application withdrawn after OCFI informed the principal that the basis on which his or her application would be rejected was for lack of commercial integrity[4] (Supplemental Request No. 15); or (2) the separate application granted by OCFI despite the fact that the principal had a previous arrest (Supplemental Request No. 16). Defendant took the blanket position that any and all documents concerning other applications to OCFI were confidential and not relevant to Plaintiffs' claims. Counsel for Plaintiffs explained the basis for their relevance, and suggested Defendant produce the applications and associated materials in redacted format to protect the privacy of the applicants. Defendant refused, and this motion ensued.

## **LEGAL STANDARD**

When a party makes an objection as to the relevance of discovery, "the court [will] become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it, so long as it is relevant to the subject matter of the action." *Moreno Rivera v. DHL Glob. Forwarding*, 272 F.R.D. 50, 54 (D.P.R. 2011) (*citing Sánchez–Medina v. Unicco Serv. Co.*, 265 F.R.D. 29, 37 (D.P.R.2010)). Relevancy is construed broadly, to include any information that is, or may become an issue during litigation, or might be

---

[3] Counsel for Defendant helpfully explained a two-stage process in the application process relating to permits to "organize" and permits to "establish" an international financial entity in Puerto Rico, stated that OCFI had been somewhat confused about Supplemental Request No. 10, and said that he would work on obtaining the information necessary to provide Plaintiffs with the number of applications in the past five years. While Plaintiffs appreciate counsel's helpfulness, such confusion as to Supplemental Request No. 10 could have been remedied the day the Supplemental Requests were served.

[4] Counsel for Defendant explained that the sole application to be rejected by OCFI for lack of commercial integrity in the past five years was Plaintiffs'.

relevant to the subject matter of the action. *Metro. Prop. & Cas. Ins. Co. v. Advanced Spine Centers, Inc.*, No. 07-CV-10746-RCL, 2009 WL 10692663, at *2 (D. Mass. Jan. 30, 2009). *See also Multi-Core, Inc. v. Southern Water Treatment Co.*, 139 F.R.D. 262, 264 n. 2 (D. Mass. 1991); *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984) (stating relevancy is broadly construed).

## ARGUMENT

1. <u>THE INFORMATION SOUGHT BY PLAINTIFFS IS RELEVANT TO THE SUBJECT MATTER OF THIS ACTION.</u>

One of the key issues in Plaintiffs' case is OCFI's deliberative process and the extent to which Plaintiffs received improper or disparate treatment, in violation of Mr. Gentile's First and Fourteenth Amendment Rights, on the basis of public statements made by Mr. Gentile and a decade-old indictment, later dismissed. Setting aside for the moment that OCFI seems intent on shrouding all of its deliberations regarding Plaintiffs' application behind one form of privilege or another, the information that Plaintiffs seek concerning other, similarly situated applications and applicants is entirely relevant to that very issue. In the past five years, only two applicants to OCFI were informed that their applications would be denied on the basis of a lack of commercial integrity; both were advised to withdraw their applications. One applicant for whom that determination was made ultimately withdrew their application. Plaintiffs did not, and pressed forward, ultimately receiving the denial they were informed was coming. In the past five years, only two applicants to OCFI had principals with a prior arrest. One applicant with a prior arrest was successful in their application, Plaintiffs were not.[5] Given Defendant's steadfast refusal to

---

[5] Plaintiffs are still waiting on Defendant to produce materials establishing exactly how many applications OCFI approved in the past five years, such request having been made in Request No. 12 of Plaintiffs' First Requests served on July 16, 2019 (*See* Exhibit No. 1).

turn over the most critical documents in the case, and the fact that the other applicant who had a prior arrest but did not make statements critical of the government was successful in its application, the only reasonable inference is that the denial of Plaintiffs' Application was in violation of their constitutional rights.

The materials Plaintiffs seek are relevant and discoverable because they involve OCFI deliberations under similar circumstances to the subject matter of this action: (1) all documents concerning the application where the applicants were advised that the principal had been determined to lack "commercial integrity" and withdrew their application rather than moving forward with a denial on the record; and (2) all documents concerning the application where the principal disclosed a prior arrest, such application having later been granted by OCFI.

Courts in this circuit have granted motions to compel discovery on the basis of relevancy where the information sought concerned similarly situated parties or incidents that would elucidate the decision-making, reasonableness, or reasoning in the case at bar. For example, in *Wilson v. Bradlees of New England, Inc.*, No. CIV. 93-47-JD, 1994 WL 263695, at *3 (D.N.H. Jan. 25, 1994), plaintiffs in a personal injury suit against a department store and a manufacturer whose product ignited after coming into contact with an electric stove sought "evidence of prior incidents of injury from *any* flammable garment manufactured" by the manufacturer defendant on the basis that it was "relevant to show that [defendant] had notice of the inadequacies" of a certain test and to show the defendant acted "unreasonably in relying on this test." Plaintiffs were unwilling to rely on the defendant's conclusory statement that there were no "similar" incidents of a product catching fire, asking the court instead to compel production that "may reveal other situations where a victim was burned while reaching over a stove". *Id.* The court overruled the defendant's objections to a magistrate's order granting plaintiffs' motion to

compel, noting that the magistrate had weighed the cost of production against "the benefit to the plaintiffs' case", the seriousness of the injuries, "the importance of the issues at stake, and the importance of the proposed discovery." *Id.*

Similarly, in *Walker v. Segway Inc.*, No. 11-CV-382-JD, 2013 WL 3104920, at \*2-\*3 (D.N.H. June 18, 2013) the court denied a motion for reconsideration of an order compelling the defendant to produce documents concerning prior accidents similar to the plaintiff's Segway accident. The court determined that the lower court did not err in finding that the plaintiffs had shown that "prior incidents involving Segway HTs fell within the scope of discoverable information" and that the defendant "had not shown that Segway HT models operated differently in ways that would make them irrelevant to this case." *Id.* Finally, noting the difference between discoverability and admissibility, the court ruled that "although differing circumstances might preclude the *admissibility* of evidence of some incidents at trial that issue need not be resolved for purposes of *discovery*." *Id.* (emphasis added).

Here, as in *Wilson* and *Walker*, Plaintiffs seek to discover materials and information relating to similar circumstances in which OCFI made a determination about commercial integrity. When responding to discovery requests, a defendant is required to show "specifically how ... each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive." *Aponte–Navedo v. Nalco Chem. Co.*, 268 F.R.D. 31, 36 (D.P.R. 2010) (*citing Sánchez–Medina v. UNICCO Serv. Co.*, 265 F.R.D. 24, 27 (D.P.R. 2009)). Defendant did not provide that specificity in its responses to Plaintiffs' document requests or interrogatories, it did not provide that specificity in the parties' meet and confer, and it is Plaintiffs' position that even if Defendant could provide such specificity, it would still be

10

impermissible for it to hide behind blanket "relevance" and "confidentiality" arguments to deprive Plaintiffs of relevant materials concerning similarly situated applications.

2. PLAINTIFFS RESPECTFULLY REQUEST AN EXTENSION OF THE DISCOVERY DEADLINE.

As set out more fully above, Defendant has been dilatory with respect to its discovery obligations, meaning that Plaintiffs are not in receipt of all relevant materials necessary to commence depositions. In addition to the Requests to which Defendant has objected, Plaintiffs are still waiting on documents responsive to Supplemental Request No. 10 ("documents … sufficient to list any and all applications for a permit to establish an international financial entity in Puerto Rico") in order to ascertain how rare the denial of their Application was. Finally, because Defendant only produced its privilege log *last night*, and said privilege log appears to have deficiencies, Plaintiffs must now engage in an additional meet and confer process with Defendant in order to ascertain which document requests relate to each document withheld, how long each withheld document is (because the log contains no Bates numbers), and whether privilege is improperly claimed as to any or all of them.

In addition, Plaintiffs served a Fed. R. Civ. P. Rule 45 subpoena on the SEC on October 9, 2019 with a return date of November 7, 2019. As of the date of filing of this motion, although the SEC has served objections, no document response has been forthcoming and negotiations are ongoing. Plaintiffs also served a Fed. R. Civ. P. Rule 45 subpoena on BDO Puerto Rico (the advisory firm responsible for preparing and submitting the Application) on October 22, 2019 with a return date of November 6, 2019. As a matter of courtesy, and upon BDO's request, Plaintiffs extended the return date of that subpoena to November 18, 2019.

For these reasons, in order for Plaintiffs to obtain the discovery to which they are entitled, Plaintiffs respectfully request that this honorable Court grant an extension of the discovery deadline to February 29, 2020.

## **CONCLUSION**

For all of the reasons set forth above, Plaintiffs respectfully request that this honorable Court issue an Order:

1. Compelling Defendant to Respond to Supplemental Request Nos. 10, 15, and 16 within 30 days;

2. Extending the time for all discovery to be completed to February 29, 2020; and,

3. Awarding Plaintiffs their reasonable expenses, including attorney's fees, incurred in bringing this motion.

Respectfully submitted,

ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA, P.S.C.

  /s/ Katarina Stipec

Katarina Stipec Rubio
208 Ponce de Leon Avenue
Suite 1600
San Juan
Puerto Rico, 00918
(787) 281-1852
kstipec@amgprlaw.com

                    /s/ Adam Ford

FORD O'BRIEN LLP
Adam Ford
(admitted *pro hac vice*)
575 Fifth Avenue
17th Floor
New York, NY 10017
(212) 858-0040
aford@fordobrien.com

Dated: San Juan, Puerto Rico
November 12, 2019