UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Mint Bank International, LLC and Guy Gentile Nigro<br><br>*Plaintiffs,*<br><br>- against -<br><br>Office of the Commissioner of Financial Institutions of Puerto Rico,<br><br>*Defendant.* | Case No.: 3:18-cv-01441-WGY |

## PLAINTIFFS' MOTION TO COMPEL CONFIDENTIALITY AGREEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

TO THE HONORABLE COURT,

NOW COME Plaintiffs Mint Bank International, LLC and Guy Gentile Nigro, through the undersigned attorneys, and respectfully state and pray:

Plaintiffs have once again been placed in a position of having to seek the court's intervention to compel discovery from Defendant Office of the Commissioner of Financial Institutions of Puerto Rico ("OCFI") pursuant to Rule 37(a)(3)(B)(iv) of the Federal Rules of Civil Procedure after it has dragged its feet (yet again) in discovery.

This time is different, however. By refusing to sign a standard confidentiality agreement, OCFI is blocking Plaintiffs from obtaining, via a Fed. R. Civ. P. 45 subpoena to their former advisor BDO Puerto Rico, evidence that is central to their case. Plaintiffs' principle claim against OCFI is that its reason for denying Plaintiffs' application to organize an international

1

financial entity in Puerto Rico – Plaintiffs' failure to disclose the existence of a pending civil lawsuit – was pretextual and that in fact, OCFI denied their application impermissibly on the basis of Mr. Gentile's anti-government speech.  The documents and materials that Plaintiffs seek from BDO (which documents BDO has gathered and is ready to produce upon the execution of a standard confidentiality order) will show that *OCFI's application does not even require information about pending civil lawsuits to be disclosed*.

OCFI has refused to enter into a confidentiality agreement, and is therefore blocking Plaintiffs from obtaining this vital discovery.  OCFI asserts that the confidentiality agreement will interfere with its regulatory obligations, should a regulatory issue come to light in the BDO documents. Plaintiffs have modified their proposed agreement to explicitly include a provision stating that the agreement *shall not* interfere with OCFI's duty to act.  However, after nearly two months of back and forth, unreasonable delay, and now unreasonable refusal to sign, Plaintiffs have no choice but to seek this honorable Court's intervention.

Plaintiffs do not seek by this motion any information otherwise protected by statute. Plaintiffs have been reticent to bring another discovery dispute to this Court and have given Defendant every opportunity to comply with its request - to Plaintiffs' *own detriment* as the discovery clock ticks.  But in light of Plaintiff's unreasonable and baseless refusal to agree to a confidentiality agreement, the importance of the BDO discovery, and the upcoming discovery deadline of **March 15, 2020** which this honorable Court has stated it will not extend, Plaintiffs respectfully request that this Court swiftly enter as a protective order the confidentiality agreement attached hereto as **Exhibit 1**, and issue an order compelling Defendant to comply with it.

## BACKGROUND

The Court is by now familiar with this action and the parties thereto.  This case concerns Plaintiffs' application to OCFI to organize an international financial entity in Puerto Rico (the "Application") which OCFI purported to deny on the basis of Mr. Gentile's lack of "commercial integrity."  Plaintiffs allege that OCFI's "commercial integrity" determination was pretextual, and that in fact the Application was impermissibly denied on the basis of Gentile's public, "offensive", and anti-Government speech, in violation of his First Amendment Rights.

As relevant to this Motion, Plaintiffs through their Puerto Rican local counsel issued a subpoena pursuant to Fed. R. Civ. P. 45(a) (attached hereto as **Exhibit 2**) to BDO Puerto Rico on October 22, 2019 with a return date of November 6, 2019.  The subpoena sought documents related to the Application, including documents concerning the meaning of Section 5, Question B(2) of the OCFI application for a permit to organize an international financial entity, which states:[1]

> Have you ever been?....Arrested, detained, charged, convicted of any felony or of any fraudulent acts summoned to answer for any criminal offence or violation for any reason whatsoever, regardless of the disposition of the event?

The subpoena also requested documents and materials related to the expertise and experience of the BDO personnel involved in preparing the Application.  Importantly, the subpoena did not seek information related to any *other* applications to OCFI for a permit to organize an international financial entity.  OCFI has not to date either objected or moved to quash or modify it.

---

[1] Importantly, Plaintiffs sought the same documents and materials concerning Section 5, Question B(2) of the OCFI application from OCFI in party discovery.  Defendants have not produced any responsive materials, but have produced to Plaintiffs a large privilege log.

3

On November 6, 2019, BDO served responses and objections to the Subpoena. Plaintiffs conferred with BDO in series of telephone calls and emails in the following weeks to discuss those objections and to somewhat narrow the scope of the subpoena. BDO collected all relevant materials, and then informed Plaintiffs' counsel that it would not agree to produce them until there was a confidentiality order in place in the litigation.

This request began a nearly *two month process* in which Plaintiffs sought Defendant's agreement to execute a simple, standard, confidentiality agreement. As set out in **Exhibit 3** attached hereto, on December 6, 2019, Counsel for Plaintiffs Adam Ford emailed Counsel for Defendant, Rafael Fernandez Castañer, noting that the parties had not yet entered into a protective order for discovery, and attaching a standard confidentiality agreement. Attorney Castañer replied on December 9, 2019 stating OCFI would "look it over and get back to you on it." On December 11, 2019, Attorney Ford reminded Attorney Castañer about the confidentiality agreement and explained that third parties are "refusing to produce documents without it, so failure to sign is really holding up discovery." After Attorney Castañer stated on December 11, 2019 that he was still waiting on his client's decision, Attorney Ford replied on December 13, 2019 that his position did not "make sense" – that Plaintiffs had proposed a "standard agreement that the parties will agree to keep all documents confidential", and asked what the hold-up was.

Counsel for Plaintiffs again sought an answer on the confidentiality agreement on December 16, 2019, December 18, 2019, January 3, 2020, and January 8, 2020, to which no response was received. On January 13, 2020, Attorney Castañer took a moment of his "personal time" to address the matter. Stating that he had previously informed Plaintiffs' counsel that his "client was not inclined to agree to a protective order" (he had not), Mr. Castañer stated that OCFI had "affirmed that position" for "whatever information BDO may disclose." Mr. Castañer

4

stated that the rationale was that OCFI "was a regulatory and public order agency and if any irregularities come up, they are obligated to act." And that "because our client has no idea what may be revealed by BDO, the answer to a protective order for BDO disclosures, is, again in the negative." Mr. Castañer then asked that Plaintiffs hold off any case matters for a week, until January 21, 2020, when he would be back in the office.

On January 29, 2020, Plaintiffs informed OCFI that it would be seeking court intervention to put in place a protective order and compel OCFI's compliance. The parties met and conferred on January 30, 2020, and on the same day, counsel for Plaintiffs emailed an amended confidentiality agreement which contained an additional paragraph 18 designed to address OCFI's concerns. The paragraph stated "[n]othing in this Order shall affect a party's legal obligations to disclose any document if required to do so by law."

On January 31, 2020, Attorney Castañer replied that "for the reasons previously stated, our client will not sign a confidentiality agreement." On the same day, because OCFI's ongoing objection did not make sense in light of the protective clause in paragraph 18, Plaintiffs' counsel stated that OCFI's response did not "make sense" and that the only apparent reason for OCFI's refusal was to "harass my client and drive up litigation costs." Mr. Castañer replied "once again, our client indicated to us that he does not agree to a protective order for whatever information BDO may disclose to yours. I'm not sure there are any other words I can use to convey this."

This motion followed.

## ARGUMENT

Fed. R. Civ. P. 45 empowers any party to a litigation to command a non-party to produce documents, tangible things, or attend a deposition. District Courts "are to interpret liberally the discovery provisions of the Federal Rules of Civil Procedure to encourage the free flow of

information among litigants." *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003).  As with all other discoverable information, a Rule 45 subpoena must request materials "reasonably calculated to lead to the discovery of admissible evidence." *Jee Family Holdings, LLC v. San Jorge Children's Healthcare, Inc.*, 297 F.R.D. 19, 20 (D.P.R. 2014) *citing* Fed. R. Civ. P. 26(b)(1).  A party who objects to a Rule 45 subpoena may move to quash or modify, which a court "shall quash or modify . . . if the subpoena 'subjects a person to undue burden.'" *Id. citing* Fed. R. Civ. P. 45(c)(3)(A)(iv).

      Here, Defendant has not utilized the procedural remedies available to it by moving to quash or modify the subpoena to BDO by showing that the documents are not relevant or the burden on BDO is too great (or set out any other alleged flaws).  Instead, it seeks to circumvent those procedures, and "effectively" quash the subpoena by refusing to sign the confidentiality agreement.  Its basis for doing so – that it cannot be precluded by the confidentiality agreement to act as a regulator with respect to any material it receives in discovery – is rendered moot by the language included by Plaintiffs, which explicitly prohibits the confidentiality agreement from interfering in OCFI's legal obligations.

      And nor *could* OCFI argue that the subpoena to BDO seeks information not relevant to Plaintiffs' claims.  Plaintiffs seek from BDO information relevant to their claim that the denial of the Application based on Mr. Gentile's lack of "commercial integrity" was pretextual.  They seek BDO's expertise and experience in submitting applications of similarly situated applicants to OCFI, and documents and materials reflecting BDO's understanding of what Section 5, Question B(2) of the OCFI application requires all applicants to disclose.  Relevancy is construed broadly, to include any information that is, or may become an issue during litigation, or might be relevant to the subject matter of the action.  *Metro. Prop. & Cas. Ins. Co. v. Advanced Spine Centers,*

*Inc.*, No. 07-CV-10746-RCL, 2009 WL 10692663, at *2 (D. Mass. Jan. 30, 2009).  Finally, OCFI cannot argue that the subpoena is too burdensome:  BDO has agreed to comply with it.

In sum, OCFI's refusal to sign a standard confidentiality agreement which explicitly protects its right to act as a regulator is without basis in law or fact and acts, inequitably, to prevent Plaintiffs from obtaining vital information and materials to which they are entitled.

## **CONCLUSION**

For all of the reasons set forth above, Plaintiffs respectfully request that this honorable Court issue an Order:

1. So-order the protective order attached hereto as Exhibit 1;
2. Issue an order compelling Defendants to comply with it; and
3. Award Plaintiffs their reasonable expenses, including attorney's fees, incurred in bringing this motion.

WE HEREBY CERTIFY that on this same date Plaintiffs filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record

Respectfully submitted,

ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA, P.S.C.

  */s/ Katarina Stipec*

Katarina Stipec Rubio
208 Ponce de Leon Avenue
Suite 1600
San Juan
Puerto Rico, 00918
(787) 281-1852
kstipec@amgprlaw.com

                                        /s/ Adam Ford

                                        FORD O'BRIEN LLP
Adam Ford
Danielle McLaughlin
(admitted *pro hac vice*)
575 Fifth Avenue
17th Floor
New York, NY 10017
(212) 858-0040
aford@fordobrien.com
dmclaughlin@fordobrien.com

Dated: San Juan, Puerto Rico
February 7, 2020